JOHN J. HALKO, JR., Appellant, v. THE STATE OF DELAWARE, Appellee.

(*November* 7, 1961.)

SOUTHERLAND, Chief Justice, and WOLCOTT, Justice, and MARVEL, Vice Chancellor, sitting.

*John M. Bader* (of Bader and Biggs) for appellant.

*W. Laird Stabler, Jr.*, Deputy Attorney-General, and *Kenneth W. Lewis*, Former Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 26, 1961.

SOUTHERLAND, Chief Justice.

John J. Halko, Jr., was charged with four violations of the motor vehicle code: (1) driving under the influence of liquor; (2) driving while his license was under a period of revocation; (3) having in his possession a revoked license; and (4) leaving the scene of an accident. He was convicted of the first three charges, and acquitted of the fourth. He appeals.

We consider the evidence in the light most favorable to the State. So viewed, the facts proved are these:

Between 1:00 and 1:30 a.m. on Sunday, October 18, 1959, Edward R. Holler, Jr. was driving easterly on the Boxwood Road in suburban New Castle County. There was only one other car in view on the road, a 1959 Imperial. It was "weaving all over the road". Holler followed the car for about a quarter of a mile and then passed it. The driver was slumped over the wheel.

About 1:30 a.m. William D. Forestieri was driving easterly on Boxwood Road and saw what he thought was a 1959 Cadillac "weaving all over the road". Forestieri was afraid to pass it, but when it pulled over to the curb near the Conrad School he passed the car slowly. No one was in the car but the driver.

Forestieri continued on the Boxwood Road to Maryland Avenue, a Wilmington street extending southwesterly into suburban New Castle County. It intersects the Boxwood Road diagonally from northeast to southwest.

The second car pulled away and followed Forestieri. It caught up with him at the intersection and collided with the back of Forestieri's car. It then passed Forestieri's car. In the intersection Forestieri saw the driver in the glare of the streets and of the lights of a gas station. He later identified Halko as the driver.

Halko proceeded easterly on the Middleborough Road, an extension of Boxwood Road. At times he was off the road. He turned left, *i.e.* north, into the DuPont Road, Forestieri

following him. He followed the DuPont Road to Valley Road, where in turning right he collided with a stop sign. He went east on the Valley Road, and Forestieri continued on the DuPont Road north to its intersection with Maryland Avenue. During the time when he was following Halko, Forestieri got Halko's license number. (He apparently reversed two digits of a six-figure number, but this is of no moment.)

Reaching Maryland Avenue he went into the office of the Park Cab Company and reported the matter to Mr. Paul Perry. He told Perry that he would try to find the car. He found it in front of the premises of the H. and S. Manufacturing Company, Halko's company, 15 Brookside Drive. The motor had been cut off, but the head lights were on. Halko was at the wheel, apparently dead drunk. Forestieri returned to Perry's office, and told Perry he would go back to the car and wait. Later Perry also drove to the premises. In due course the police were notified. Two Wilmington police and later two State police arrived. The matter was outside of Wilmington and the State police handled it.

All four officers testified to Halko's condition. He was so drunk he could not be roused by voice, by tapping on the window, or by shaking; he had to be supported. An empty wine bottle was between his legs. The officers tried to question him, but he could say nothing intelligible. He was mumbling about "a pipe".

He was taken to the State Police Station. The police found that he had a duplicate of an operator's license that had been revoked. Prosecution followed, first in the Court of Common Pleas and then in the Superior Court.

The defense to the first and second charges, involving the operation of his car, was an alibi. Halko testified he drove from Wilmington that night to his place of business to do some work; while he was there he was on the telephone, on and off, from twelve thirty to one thirty, talking to Russell

Lombardi, an employee of his, and also to his former wife. After finishing his work he concluded to wait in his car for Lombardi. When the City Police arrived he "played possum" to keep out of trouble. This was his story.

Mrs. Halko, Lombardi, and another employee testified in support of the alibi.

Halko's defense to the charge of having in his possession a revoked license was that he had forgotten that he had it.

The jury found him guilty on these three charges.

The ingenuity of counsel presents us with seven alleged errors in the trial. Only one of them has any substantial merit, the objection to the charge to the jury on the defense of alibi. As will later appear, the case must go back for retrial on the first two charges because of error in this matter. But on the retrial defendants will probably renew some of the points now before us. Hence, for the guidance of the trial court, we shall rule upon certain of these objections, although several of them were not even made at the trial.

█ I. It is said that the verdict was against the weight of the evidence. The testimony leads us to the contrary conclusion. A summary of the State's case is set forth above. The jury was obviously justified in rejecting the defense of alibi. The defendant's story that he was "playing possum" when found in the car is demonstrably false.

In stating this obvious conclusion we do not wish to yield assent to the idea that it is this Court's duty to pass upon the weight of the evidence. It would be an exceptional—an extraordinary—case, indeed, to require us to undertake that task.

The argument is wholly without merit.

II. It is said that defendant was prejudiced by questions put to him by the prosecutor on cross-examination.

The facts leading up to the matter are these:

On October 24, 1958, Halko's license was revoked for a year. On December 9, 1958, it was surrendered to the Motor Vehicle Department.

Halko tried to explain why he kept in his possession a duplicate of the license. He testified it expired September 27, on his birthday; and on that day he obtained a duplicate operator's license because he had moved. At the time of his arrest, he said, he had forgotten that he had it.

The prosecutor attacked the explanation. He said:

"Q. May I suggest, Mr. Halko, that you filed for a duplicate license because, at the time, there were pending against you a criminal charge, a [on?] conviction of which you would have lost your driving privileges."

This was objected to and the court was inclined to disallow the question. But the purpose of the question having been explained, the court allowed it and the defendant did not except.

■■ We think the question was proper. The State was obviously seeking to show that the defendant's motive in obtaining the duplicate was to have a license in his possession in order to evade the law if he should be compelled to turn in his original license—as, in fact, he was later compelled to do. The question was therefore relevant to an issue made by the defendant himself. If relevant, it may not be excluded simply because it referred to the pendency of another criminal charge. 1 *Wigmore, Evidence* (3rd Ed.), § 216.

III. Error is alleged in the following incident:

After the jury had been charged and had deliberated for a while, it sent to the Judge then presiding this question:

"Can a jury suggest or recommend that mercy be shown in the sentencing of the defendant found guilty of a charge?" The court gave the following instruction:

"The short answer to your question is 'Yes', a jury may so recommend.

"However, I wish to remind you that your primary, in fact your sole function in this case is to decide the guilt or innocence of the accused. The sentence or punishment that may be meted out is a matter set by statute or assigned, in part, to the discretion of the Judge, and is not within the province of the jury. Nevertheless, you may, if you see fit, include a recommendation with the verdict."

■ We see nothing wrong in so instructing the jury. The practice of adding to a jury verdict a recommendation of mercy is and has been widespread in this State. It is true that it has no legal effect. *Powell v. State*, 7 *Terry* 551, 46 *Del.* 551, 86 *A.* 2d 371. And in some cases an instruction that such a recommendation may be made has been held to be erroneous, *e.g.*, *People v. Lynch*, 284 *N. Y.* 239, 30 *N. E.* 2d 577. The danger is, of course, that the instruction may encourage a compromise verdict; but here the jury was plainly told that its sole function was to decide the guilt or innocence of the accused and that the sentence was in the discretion of the judge alone. This was a caution that the recommendation carried no legal force. Probably it would be well if hereafter the trial judge would expressly add to this caution the admonition that the recommendation should never be made the basis of a compromise verdict. But we do not believe that the charge given, under the circumstances of this case, was reversible error.

IV. Defendant contends (1) that he was unlawully arrested, because (a) the Uniform Arrest Act was not followed, and (b) because the officers did not see him operate his car; and (2) that his car was unlawfully searched.

■ (1) (a). We have had occasion to consider the provisions of the Uniform Arrest Act (11 *Del. C.* § 1902) in recent cases. *De Salvatore v. State, Del.,* 163 *A.* 2d 244; *Cannon v. State, Del.,* 168 *A.* 2d 108. Its provisions are clearly applicable to the case before us. A driver of a motor vehicle complains to the police that another driver, apparently intoxicated, has collided with his car and with a stop sign. At two o'clock in the morning the police find that driver in his car, slumped over the wheel unconscious with the lights on. The car is in front of his office or business premises; not his home. To hold that he was not "abroad" within the meaning of the statute would be to emasculate it. To say that the driver is immune from detention under the statute because he has made himself too drunk to understand or answer the statutory questions approaches the absurd.

■ The officers were clearly justified in detaining the defendant.

(1) (b). But this is not all. In our opinion, the detention of the defendant was proper as a lawful arrest. The statute authorizing police officers to arrest "upon view" for violations of the motor vehicle laws (21 *Del. C.* § 701) constitutes an exception to the general law (11 *Del. C.* § 621) authorizing arrest without warrant for any crime upon "probable cause". See the discussion of the two statutes in *Rickards v. State,* 6 *Terry* 573, 45 *Del.* 573, 580-582, 77 *A.* 2d 199. The motor vehicle statute, providing for arrest "on view", derives from Section 15 of the act of April 4, 1907 (24 *Del. L.* c. 144). Over half a century ago the motor vehicle certainly did not present the problem of law enforcement that it now presents. (The speed limit was twenty miles an hour.) The section embodies the common law rule of arrest (*Rickards v. State, supra*); surely the common law is capable of adapting itself to present day needs. The facts of this case (outlined above) establish that the officers knew from view—from their own senses—that the man at the wheel of his

car was drunk. They knew that he was outside a place of business at two o'clock Sunday morning. The headlights were on. How did the car get there? It was a reasonable inference that he drove it there. And, finally, the officers were informed by another driver—who was present at the scene—that the man at the wheel had been driving the car.

In these circumstances, is it reasonable to say that the officers should have left the scene and gone to a magistrate to swear out a warrant? We do not think that the statute should be construed to require such a manifestly unreasonable course.

In *State v. Koil*, 103 *W. Va.* 19, 136 *S. E.* 510, 511, the case of *State v. Lutz*, 85 *W. Va.* 330, 101 *S. E.* 434, is cited for the following holding (syllabus):

"An offense can be said to be committed in the presence of an officer only when he sees it with is own eyes, or sees one or more of a series of acts constituting the offense, and is aided by his other senses or by information as to the others."

These cases are not in point on the facts, but the above holding (perhaps only dictum) seems to us to embody a sensible rule under modern conditions. The common law rule of arrest on view embodies the historical distinction between felonies and misdemeanors. This distinction has become largely arbitrary and dependent on legislative definition. *Brooks v. Taylor*, *Del.*, 154 *A.* 2d 386. To adhere blindly to an arbitrary distinction in applying the law of arrest seems to us unjustified. We do not mean that a police officer may arrest solely on suspicion of violation of the motor vehicle laws, as he may arrest on suspicion of felony; the language of the act of assembly—"on view"—controls. But we do say that this arbitrary distinction justifies a liberal and reasonable interpretation of the phrase "on view". When, as here a police officer sees for himself a driver dead drunk at the wheel of his car, under circumstances indicating that the car has recently

been operated and he is assured by another driver that the man at the wheel had actually been driving, we are of opinion that the arrest is made for a violation "on view" within the meaning of the statute.

(2) Since the detention and arrest was lawful, it follows that the search of the car was lawful.

One further comment must be made. Counsel for defendant who tried the case below never attacked the legality of the detention or arrest, and the State invokes the rule that the objection comes too late here. This answer would ordinarily be accepted; but since the case must be retried on two of the charges, we think it is our duty to settle the issue now, as heretofore indicated.

V. As first above stated, defendant was tried on four charges, including a charge of leaving the scene of an accident involving property damage. He was acquitted of this charge, but now claims that he was nevertheless prejudiced by being tried on this charge in the Superior Court, because he had already been tried and acquitted of the same charge in the Court of Common Pleas. The record does not show this fact, but the State's brief does not deny the assertion. No plea of former jeopardy was made.

We do not pause to comment on these astonishing circumstances. Since there must be a retrial the contention is moot, for we must believe that a third trial on this offense will not occur.

VI. Defendant founds a claim of error on the fact that there was a substitution of judges during the trial.

The following appear to be the facts.

President Judge Terry presided during the taking of all the testimony, and charged the jury. Thereupon a recess was taken until 1:45 p.m. At 3:00 p.m. the judge called in the jury and inquired whether there was any help he could give

the jury. There was an inquiry by the foreman and a reply by the judge, not here important. Then the judge said:

"I am going to say 'Goodbye' to you until Monday. Judge Christie will take your verdict when you return. You may go back to your room."

At 6:10 p.m. occurred the episode concerning the recommendation for mercy, already dealt with. At 6:20 p.m., when the verdict was taken, Judge Christie was on the bench.

No objection was taken to the substitution.

Defendant asserts that the substitution of a judge was error. There is certainly authority that sustains this view. The authorities are reviewed in *Freeman v. United States* (*CCA* 2), 227 *F.* 732, pp. 751-760. See also *Durden v. People*, 192 *Ill.* 493, 61 *N. E.* 317, 55 *L. R. A.* 240; *Commonwealth v. Clancy*, 113 *Pa. Super.* 439, 173 *A.* 840.

The general rule laid down in these cases is that the substitution of a judge in a criminal trial should be permitted only in exceptional circumstances, unless it is done with the consent of the defendant. In the instant case the silence of the defendant's counsel amounted to consent. *People v. Hobson*, 17 *Cal.* 424, 429.

We are unwilling to announce as strict a rule as that found in some of the cases. For many years, as all Delaware judges and lawyers know, there has existed a practice of having another judge "take the verdict", or, in cases in which more than one judge has sat, of having one only of the judges take the verdict.

■■ In the light of the long usage in this State we are not justified in saying that it is error as a matter of law for another judge to take the verdict. Some prejudice must be shown and we find none here. Any judge would have been able to answer the jury's question. But we must say that unless the defendant consents the practice may lead to error because

prejudice may result. Suppose a jury asks a question the answer to which requires a knowledge of the testimony. Obviously, a substitute judge is not in a position to give a well-considered answer.

VII. The final point concerns the charge on the defense of alibi.

Defendant requested the following charge:

"An alibi simply means that the accused was at another place at the time the crime charged is alleged to have been committed, and therefore could not have committed it. All the evidence should be carefully considered by you, and, if the evidence on this subject, considered with all the other evidence, is sufficient to raise a reasonable doubt as to the guilt of the defendant, you should acquit him. The defendant is not required to prove an alibi beyond a reasonable doubt, or even by a preponderance of evidence. It is sufficient to justify an acquittal if the evidence upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged. And you will understand, also, that the attempt of the defendant to prove an alibi does not shift the burden of proof from the prosecution, but that the prosecution is bound to prove his presence beyond a reasonable doubt."

The court after defining "alibi" charged as follows:

"Testimony adduced to establish an alibi should, together with other testimony in the case, be considered by the jury in reaching their verdict. In order that the defense of alibi may be effective, the jury should be satisfied from the testimony that the defendant was not at the place where the alleged offense was committed at the time it was committed, and that he could not, therefore, have committed the offense charged.

"An alibi will not avail as a defense unless the jury are satisfied by reliable and credible testimony that the absence

of the defendant has been so clearly shown that it was physically impossible for him to have committed the offenses or any of them for which he is now being tried."

The charge, in effect, told the jury that the burden was on the defendant to prove the defense of alibi to the "satisfaction" of the jury, *i.e.*, by a preponderence of the evidence. *Quillen v. State,* 10 *Terry* 114, 49 *Del.* 114, 125, 110, *A.* 2d 445.

There is precedent in Delaware for this charge on the defense of alibi. *State v. Lee,* 1 *Boyce,* 18, 24, 74 *A.* 4 (dictum), *State v. Prettyman,* 6 *Boyce* 452, 455, 110 *A.* 476 (a good defense when proved to the satisfaction of the jury). And no doubt the charge has been given in unreported cases.

But we think it clearly erroneous. It is bottomed upon the theory that an alibi is an "affirmative defense", similar to self-defense or insanity or former jeopardy. This is incorrect. An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it; or, as in former jeopardy, to invoke a bar arising out of the facts *dehors* the record.

"The defense of alibi * * * is not, properly speaking, a defense within any accurate meaning of the word 'defense' but is a mere fact shown in rebuttal of the evidence introduced by the State." I *Wharton's Criminal Law* § 381.

Since an alibi is only a denial of any connection with the crime, it must follow that if the proof adduced raises a reasonable doubt of defendant's guilt, either by itself or in conjunction with all other facts in the case, the defendant must be acquitted. 1 *Wharton's Criminal Law,* § 381, citing cases from nearly every state in the Union. For an analysis of the point, see the annotations in 29 *A. L. R.* 1127-1202; 67 *A. L. R.* 138-157. At 29 *A. L. R.* 1139, the annotator says:

"As already indicated (see I., *supra*), the confusion arising with respect to the present question seems to be due

largely to the tendency on the part of the courts to regard alibi as an affirmative defense, like insanity, and to consider evidence to prove an alibi in the same light as they would evidence offered in support of such defenses. Some courts, however, have pointed out the fallacy of this position, and expressly assented to the true rule that alibi is not an affirmative defense, and that evidence to prove the same is not to be treated as proof offered to establish an independent, affirmative matter set up by the defendant, but merely evidence tending to disprove one of the essential factors in the case of the prosecution, *viz.*, presence of the defendant at the time and place of the alleged crime."

Support for the charge as given is to be found in many Pennsylvania cases, in which, however, there is some confusion, and in which are to be found expressions of doubt as to the soundness of the charge, and some adverse criticism of it. See *Commonwealth v. McQueen*, 178 *Pa. Super.*, 38, 112 *A.* 2d 820, 822-823, for a discussion of these matters. However, the recent decision of the Supreme Court of Pennsylvania in *Commonwealth v. Bonomo*, 396 *Pa.* 222, 151 *A.* 2d 441, appears to overrule the earlier cases and to bring the Pennsylvania law into accord with that laid down by the text books and by the vast majority of decisions.

We have recently considered this subject of the burden of proof in a criminal case, *i.e.*, the real burden, not the mere duty to go forward with testimony. *Quillen v. State, supra.* That was a homicide case involving the issue of self-defense. The trial court charged that the burden was on the defendant to establish the defense to the satisfaction of the jury. We held the instruction correct, following the old English precedents as well as our own. But we added:

"In saying this we are not to be understood as approving all of the charges on the burden of proof that appear in our reports. In *State v. Gardner, Houst. Cr. Cas.* 146, the court appears to have charged that circumstances of provocation

must be proved beyond a reasonable doubt—a pronouncement that is certainly not the law. In *State v. Prettyman*, 6 *Boyce* 452, 100 *A*. 476, 478, the burden was placed upon the accused to prove an alibi 'to the satisfaction of the jury.' The correctness of this instruction is certainly doubtful, since an alibi does not seek to excuse or mitigate a homicide; it is a flat denial of complicity in the crime. But the instructions here given were correct." 49 *Del*. 125, 110 *A*. 2d 451.

The doubt we expressed in that case was intended to suggest a re-examination of the soundness of the *Prettyman* case; but our remark was only dictum and perhaps not specific enough to justify the Superior Court in overruling *Prettyman*. At all events, the further examination of the law we have made for ourselves in this case has convinced us that our doubt was well founded. The charge in the *Prettyman* case is erroneous. The charge should have embodied the law as we have above stated it.

The State makes the point that after the charge had been delivered the defendant failed to note an exception. This is true; but we think that he did fairly apprise the court of his point. He actually cited the *Bonomo* case in Pennsylvania as authority for his prayer. True, he did not cite the *Quillen* case, but we think that it is fair to assume that the trial court was familiar with it. In the circumstances here presented we follow the rule in *Stilwell v. Parsons*, 1 *Storey* 342, 51 *Del*. 342, 145 *A*. 2d 397. This point was sufficiently raised.

We are reluctantly compelled to reverse the judgment and remand the case for a new trial upon the two charges involving the driving of the car (Criminal Actions Nos. 637 and 639).

The judgment in the third case (Criminal Action No. 636) is affirmed.