204 A.2d 628 (1964)
John J. HALKO, Jr., Appellant,
v.
STATE of Delaware, Appellee.
Supreme Court of Delaware.
July 28, 1964.
On Appeal and Reargument. November 17, 1964.
Frederick Knecht, Jr. of Knecht & Conte, Wilmington, for appellant.
Sotiere S. Kapsalis, Deputy Atty. Gen., Wilmington, for the State.
WOLCOTT and CAREY, Justices, and STIFTEL, Judge, sitting.
*629 WOLCOTT, Justice.
This is an appeal from a conviction of driving while under the influence of liquor. The evidence produced on behalf of the State follows briefly.
On October 18, 1959, one Forestieri was driving his automobile in the environs of the City of Wilmington at about 1:30 a. m. In front of him he observed an automobile which he thought to be a Cadillac weaving from side to side. This car pulled off to the side. Forestieri passed it and as he did so saw Halko, the appellant, at the wheel. Forestieri continued on and stopped for a red light at which time in his rear-view mirror he saw the other car coming up behind him. Sensing the danger of a collision, he started to drive through the red light but his car was struck by the car driven by Halko. Property damage to Forestieri's car was slight.
The car driven by Halko stopped briefly after the accident, started up and passed in front of Forestieri's car. Forestieri again recognized Halko as the driver. He noted the license number of Halko's car and followed it to South duPont Road where it turned left followed by Forestieri. Halko's car finally turned right into Valley Road but Forestieri continued straight on to the Park Cab Company's office where he stopped and reported the circumstances to one Perry, including the license number of the car which had struck his. Perry made a call to the Wilmington Police at about 1:40 a. m. reporting the incident. Forestieri then returned to Valley Road looking for Halko's car and located it parked in front of 15 Brookside Drive, Halko's place of business. He observed Halko slumped at the wheel of his car. The headlights of Halko's car were on, the windows and doors were closed but the motor was not running.
Forestieri then returned to the office of the Park Cab Company and told Perry that he had located the car and its location. He then returned to 15 Brookside Drive and waited for the police to arrive. Actually, Forestieri then, or at some subsequent time, learned that Halko's car was not a Cadillac but was in fact a blue 1959 Chrysler.
Thereafter, Perry came to 15 Brookside Drive and found only Forestieri there. Perry went to look for the Wilmington City Police and returned at about 2:15 a. m. with two officers who had previously tried to locate the accident which had been reported earlier by Perry in response to Forestieri's request and broadcast on the Wilmington police radio. The City Police did nothing. They waited on the scene since the site was outside of the city limits. About 15 minutes later two State Police Officers, Klair and Stoops, arrived. They found Halko slumped over the wheel of the Chrysler parked on the scene. They were unable to arouse him and accordingly opened the door and ultimately removed him from his car. An empty wine bottle was observed between his legs. In their *630 opinion he was drunk. In view of their inability to get an intelligent answer from Halko or ascertain his identity, they handcuffed him, put him into the police car and took him to Troop No. 2 Station where he was locked up for the balance of the night and charged the next morning with driving while under the influence of liquor on a warrant executed by Forestieri. At 2:41 a. m. the State Police Officers reported by radio to Troop No. 2 that they were returning with Halko in their custody.
Halko's defense was alibi. His alibi was attempted to be established by himself and other witnesses. In brief, it was that he, in the company of friends, had gone to a movie earlier that evening and returned to his place of business sometime prior to 11 o'clock in order to perform some necessary work. Halko, whose license incidentally had been revoked as a result of a prior conviction, testified, supported by his witnesses, that he had never driven his car that night. While at his place of business Halko received numerous telephone calls from a Mrs. Janes who called him several times between 12:30 a. m. and 1:45 a. m., and also from his former wife who called him between 1:00 and 1:30 a. m. and again about 1:50 to 2:00 a. m.
On these facts the case was submitted to the jury and Halko was found guilty. It is obvious that the jury rejected his evidence as to alibi and believed the testimony offered by Forestieri and the police officers.
Initially, appellant argues that error was committed in the trial when his counsel was denied leave to use copies of accident reports filed pursuant to 21 Del.C. § 318 with the State Highway Department, the originals of such reports not having been produced pursuant to a subpoena duces tecum. This Code section provides that the State Highway Department shall prepare and supply the police with suitable forms for accident reports designed to elicit detailed information concerning highway accidents and their causes. The purpose of the section is to permit the collection of statistical information as to highway accidents in order to take preventative action for the future. Sub-section (b) of the cited Code section provides that such reports shall not be open to public inspection but that the fact of the existence of such reports shall be admissible in evidence solely to prove compliance with § 318, "but no such report or any part thereof or statement contained therein shall be admissible in evidence for any other purpose in any trial, civil or criminal, arising out of such accident."
Halko argues to us that he did not intend to put the reports into evidence but wanted to use them solely in cross-examination of the State Police Officers with reference to the times indicated on the reports, particularly with reference to their time of arrival, the time of their departure, etc. The contention is that the defense of alibi made such times particularly pertinent since the jury necessarily had to pass on the credibility of the witnesses testifying.
Initially, we note that the ruling of the trial judge is not precisely clear. It is clear that, relying upon the statute, he ruled such reports could not be admitted into evidence. In commenting upon the ruling, Halko's counsel stated that he understood the ruling to be that he could not use the reports as "a basis upon which to cross-examine the police officers and to show that what they have testified in this trial is different from what they wrote on those reports."
Whether or not this was the precise ruling, thereafter all counsel and the court proceeded upon the assumption that this was in fact the ruling.
Incidentally, there is nothing in the record before us to show what, if any, inconsistency as to time would have appeared between the testimony of the police officers at the trial and the times set forth in their reports. The originals of the reports were unavailable at the trial and counsel for Halko did not make an offer in any way of the copies in his possession in order to *631 have them identified and made a part of the record. However, we will do the best we can with the record before us.
It is, of course, obvious that 21 Del. C. § 318(b) clearly prohibits the admission into evidence of at least a portion of the reports relating solely to the facts and circumstances of the accident, itself. In Davis v. Brooks Transportation Co., Inc., 186 F. Supp. 366, the Federal District Court for Delaware construed 21 Del.C. § 318(b) as giving a privileged classification only to such facts and circumstances and not to other information contained in such reports obtained as the result of police investigation. In Skinner v. Herzog, C.A. No. 11, 1960, the Superior Court of this State followed the Davis case and authorized the refreshing of a police officer's recollection from such reports and their use in the cross-examination of such officer.
We approve the construction placed upon 21 Del.C. § 318 by the Davis and Skinner cases. In our view, it is permissible for a testifying police officer to use the accident report made out by him to refresh his recollection and, in turn, be cross-examined upon the basis of the report. In the event there appears a conflict between his testimony at the trial and his accident report, we are of the opinion that such portion of the accident report relating solely to police investigation may be offered in evidence in contradiction. Of course, if the officer does not deny the inconsistency, then there is no occasion for the introduction of the report.
This, we think, is the proper rule to be followed by the trial courts of this State. We now attempt to apply it to the facts at bar.
As we have noted, the reports themselves are not in this record. Halko, however, attempted to prove a discrepancy in the times which we presume might have been borne out by the reports in question. One witness testifying for Halko stated that he arrived at Halko's place of business about 1:50 a. m.; that his car was there and that there was nobody in it. He further testified that at the first trial in the Court of Common Pleas, Officer Klair testified as to a time of 1:30 a. m., and at the first trial in Superior Court, later reversed on appeal, testified as to a 2:30 a. m. time. He was not clear as to what event this time referred to.
Mrs. Halko testifying for Halko stated that at the trial in Common Pleas Court both Officers Klair and Stoops testified the accident occurred at 12:30 a. m. and at the first trial in Superior Court testified it occurred at 1:30 a. m.
It is not clear just what discrepancy in the times Halko is complaining of. Mrs. Halko's testimony as to the discrepancy concerned the time of accident. If it was with respect to the police officer's written report it is inconsequential since obviously that report was based upon hearsay, the officers not being present at the time of the accident.
The other witness testifying for the defense stated that the discrepancy in times had to do with the time at which the officers arrived at the site of Halko's business. If this is the fact, the discrepancy is entirely inconsequential because the issue before the jury was whether or not Halko was driving his car at the time of the accident. Incidentally, from the testimony of all witnesses who had any knowledge of that time, including Halko himself, it is quite clear that the police officers could not have arrived at the site at 1:30 a. m.
It therefore seems clear to us that any discrepancy which may have appeared between the officers' testimony and their accident reports was on an entirely immaterial matter. Counsel for Halko is therefore in the position of seeking to use the reports for the purpose of attacking the credibility of a witness on an immaterial matter.
Next, Halko charges the trial judge committed error when, in the course of the trial in the presence of the jury, he referred to notes he had been making of the testimony *632 of witnesses. The point, we think, is without substance. It has for years been customary in trials in this State for the trial judge to take such notes concerning the testimony in the course of the trial as he deems necessary in order to conduct the trial in an orderly fashion. We see no harm from a casual reference on the part of the judge to the fact that, by reference to his notes, such and such appears to have been testified to.
Furthermore, in his instructions to the jury the trial judge was clear to the effect that the jury exclusively is the trier of fact and must weigh the evidence and determine the credibility of witnesses. This was emphasized by him at least three times in his charge. If, therefore, there was any possible error in referring to his notes, this error was inconsequential and was cured by his subsequent instructions to the jury.
Next, Halko argues that error was committed when the jury was not instructed not to read newspaper articles or listen to radio broadcasts concerning the trial while it was going on.
The usual instruction to the jury not to discuss the case with anyone was given and no request was made by Halko with reference to newspaper articles or radio broadcasts. We think the point without merit.
Next, Halko argues that prejudicial error was committed in permitting the State to mark for identification a wine bottle which subsequently was never connected to the bottle observed between Halko's legs when he was taken from his car.
In the first place, no error can result from having a possible exhibit marked for identification. It is then necessary for the offering party to connect it to the case. Whether or not this effort is successful depends upon the testimony and the offer may or may not subsequently be accepted into evidence.
In any event, the trial judge specifically instructed the jury to ignore the identification of the wine bottle. This precise instruction received the approval of counsel for Halko. Whatever error there may have been therefore was cured.
Next, Halko argues that he was prejudiced by the trial judge's remark to the prosecuting official following an objection to a question asked by defense counsel that he had been waiting for such an objection.
There is only one isolated instance of this in a record of over 650 pages and it was merely a passing remark. If therefore it was error, it was inconsequential and insufficient to reverse the conviction below.
Finally, Halko argues that the circumstances under which Halko was taken into custody by the State Troopers amounted to an unreasonable search and seizure in violation of §§ 6 and 7 of Art. 1 of the Delaware Constitution, Del.C.Ann., and the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States.
The argument in effect is a request to us to reconsider our decision in Halko v. State, Del., 175 A.2d 42, in which we reversed on other grounds a prior conviction for this offense but in which we held that the arrest of Halko was in legal effect an arrest on view and that, therefore, there was no question of unreasonable search and seizure. We decline to reconsider our prior decision.
For the foregoing reasons the conviction below is affirmed.
Reargument was granted upon the limited question of whether or not the enactment of 54 L. of D.Ch. 160, which repealed T. 21 Ch. 41 and enacted new traffic regulations, prevents further prosecution of this appellant. Counsel for the appellant filed briefs and presented oral argument on the point at the same time the case of Angelini et al. v. Court of Common Pleas et al., Del., 205 A.2d 174, was argued. The decision today filed in that case controls here, and answers the contentions made by appellant on reargument.
Our affirmance of the lower Court's decision will remain unchanged.