JOHN J. HALKO, JR., Appellant, v. STATE OF DELAWARE, Appellee.

(*April* 21, 1965)

Wolcott, Chief Justice; Carey, Justice, and Wright, Judge, sitting.

*Frederick Kneecht, Jr.,* for appellant.

*Peter Warren Green,* Deputy Atty. Gen., for State.

Supreme Court of the State of Delaware.

No. 1, 1964.

WOLCOTT, Chief Justice.

This is an appeal from the conviction after a jury trial of the violation of 21 *Del. C.* Sec. 2741(5) prohibiting the use of a false statement in any application for an operator's motor vehicle license, or any renewal thereof. The appellant, Halko, was charged with giving upon an application for an operator's license a false name, a false address, and with making two false statements to the effect that he had never previously had an operator's license and that no previously granted license had ever been revoked. He was found guilty by the jury and appeals to this court.

We briefly state the facts.

Halko's license had previously been revoked. In October, 1962, he had a conversation with one Glynn, employed as an inspector and driving examiner of the Motor Vehicle Department. In the course of this conversation Glynn stated he could obtain for Halko an operator's license and, following further meetings, Halko went with Glynn to the Motor Vehicle Department where an application for a license was obtained and filled out containing the false statements referred to above. On the same day and in the Motor Vehicle Department Halko was approached by one Hollett, an employee of the Motor Vehicle Department, who inquired if he was the one Glynn had spoken about. When Hollett ascertained, this, he shook hands with Halko who then

left. His application was then approved, apparently by Hollett, indicating that he had received the preliminary examination.

Approximately ten days later, Glynn told Halko that sufficient time had elapsed for him, Glynn, to report that he had given Halko a road test and that he had passed. Some time later, as a result of all of this, an operator's license was delivered to Halko. Halko testified that upon receipt of the license he put it in his desk drawer. Some time later, for a reason which will subsequently appear, he delivered it to a Mr. Simon, his accountant, to be held by him. The license ultimately was delivered to the Attorney General by Mr. Simon.

While all of this was taking place, other events were occurring contemporaneously. Halko is engaged in the manufacture and sale of storm windows and aluminum products for the home. Over a period of time thefts were taking place at his place of business. He ultimately discovered that one of his employees was probably involved in these thefts and, accordingly, he retained a detective agency to investigate. This agency, following an investigation, produced information implicating some of Halko's employees and others. One of these other persons was Glynn.

Halko testified that when Glynn learned that he knew of his implication in the thefts he threatened Halko with prosecution under 21 *Del. C.* Sec. 2741(5). Following this alleged threat, Halko delivered the license in question to Mr. Simon.

Thereafter, Halko went to the State Police, the Wilmington City Police, the Wilmington City Solicitor's office and, finally, to the office of the Attorney General to report the thefts occurring and, also, he testified to report illegal activities occurring in the Motor Vehicle Department.

Halko finally received an appointment at the Attorney General's office on January 7, 1963. His interview at that time lasted from 5:00 p.m. until 11:30 p.m. He was not warned of any constitutional right against self-incrimination. At this interview he reported as to the results

of the detective agency's investigation and, also, sufficient of the events leading up to the issuance to him of the false operator's license to cause the Deputy Attorney General interviewing him to suspect that a criminal violation had taken place on the part of Halko.

At the close of this first interview, Halko was requested to return to the Attorney General's office the following night. At this time, present in addition to Halko were the Deputy Attorney General concerned, the State Detective, and Captains Howell and Martinelli of the police force. On this occasion Halko was put under oath and the Deputy Attorney General explained to him his constitutional rights against self-incrimination and that any statement he made might be used against him in a subsequent prosecution. Despite this, Halko at length repeated the circumstances concerning the license he had first told the Deputy Attorney General on the night before.

At the trial the statements made by Halko at the second meeting in the Deputy Attorney General's presence were introduced into evidence, Halko, himself, took the stand in his own defense and repeated at length the entire circumstances.

On these facts the case was submitted to the jury which returned a verdict of guilty.

First, Halko argues that the Superior Court had no original jurisdiction over the offense of which he was convicted. The reason urged is that Halko was tried upon four indictments presented to the Grand Jury as an original action in the Superior Court. He was notified of his indictment and told of the time of arraignment and to appear. He appeared without arrest, plead not guilty, and was released on bail. Halko relies upon 21 *Del. C.* Sec. 704, which provides that in the event of an arrest in Wilmington for a violation of any section of the Motor Vehicle Code, the person arrested shall be taken before a Justice of the Peace or the Municipal Court, and if the arrest is for a violation taking place outside the City of Wilmington he shall be taken before a Justice of the Peace.

The answer to the argument is that by 11 *Del. C.* Sec. 2701(e), the Superior Court is given jurisdiction over all crimes except where exclusive jurisdiction has been vested in another court. Since exclusive jurisdiction over such violations has not been conferred upon any court it is apparent that the Superior Court has jurisdiction over violations of 21 *Del. C.* Sec. 2741(5).

Furthermore, we think 21 *Del. C.* Sec. 704, relied on by Halko, has no pertinency in this case, for the reason that no arrest of Halko took place. An arrest is a prerequisite to the operation of the provisions of Sec. 704. Halko was indicted and notified of the indictment, and appeared voluntarily to be arraigned. We think, therefore, there is nothing to the argument made by Halko in this respect.

In his brief Halko argued that Article I, Section 8 of the Constitution, *Del. C.* Ann. providing that no person for any indictable offense shall be proceeded against criminally by information, prevented the presentation of an indictment for violation of 21 *Del. ·C.* Sec. 2741(5). He pointed to the practice of proceeding by information for misdemeanors in the statutory courts, and rather tenuously argued that this deprived the Superior Court of jurisdiction because a violation of a statute such as 21 *Del. C.* Sec. 2741 was not an indictable offense. At oral argument counsel for Halko withdrew the point by reason of the decision of this court in *State v. Cloud,* 2 Storey 439, 159 A.2d 588.

Next, Halko argues that error was committed by the introduction into evidence of the application for the operator's license in question. At the trial, Lieutant Regan, a State Police Officer, Assistant Director of the Driver Improvement Bureau of the Motor Vehicle Department, identified the application as coming from the files of the Motor Vehicle Department in Dover to which he had access, and over which indirectly he had supervision. It is quite plain from the testimony of the Lieutenant that irrespective of who actually was charged with the duty of filing the various records concerned, he had direct access to them and responsibility for them.

The objection of Halko to the admission of this evidence is based upon 10 *Del. C.* Sec. 4308, which provides that a copy of any public record kept in a public office when certified to by the head or acting chief officer for the time being of that office shall be competent evidence.

We think Halko is unduly technical in seeking to bar admission of this license application from evidence on the strength of the referred-to statute. In the first place, Regan's testimony is of such nature concerning his direct activities with the files from which this application came as to justify describing him as acting chief officer for the time being of the office in charge of the records. We consequently find no error in the admission of this document into evidence. Furthermore, while there seems to be some doubt about the matter, it appears as though the offer into evidence was not of a copy of the application, but of the original application, itself.

Next, Halko urges that error was committed when the trial court refused to charge the jury, in accordance with his request, that he was entitled to the defense of entrapment.

The facts on which Halko relies to support his proposed defense of entrapment were those outlined in the statement of facts in this opinion, and consist primarily of his theory that Glynn, the Motor Vehicle Department's examiner, solicited him to commit the ·misdemeanors charged.

Entrapment is, of course, a defense under certain circumstances to prosecution for a crime. In order to constitute the defense of. entrapment, however, it must appear, when the crime charged is not one requiring a specific criminal intent, that an officer charged with the enforcement of the law has actively solicited and procured the defendant to commit the offense in question. There seems to be little if any dissent from this view among the various jurisdictions. 15 Am.Jur., Criminal Law, Sec. 335; 22 C.J.S. Criminal Law Sec. 45(2); 1 Wharton's Criminal Law (12th Ed.), Sec. 390; 1 Wharton's Criminal

Law and Procedure, Sec. 132; 1 Burdick, Law of Crime, Sec. 195.

Since the offenses charged against Halko require no specific criminal intent, the general rule is applicable, and the mere fact of the signing and giving of the application by Halko constitutes the offense for which he has been convicted.

Another element in this case is missing in order to support the defense of entrapment. It is, we think, necessary for the person luring an unsuspecting defendant into the commission of a crime to be connected in some fashion with the active enforcement of the law. Glynn was not such. He was an examiner for operator's licenses employed by the Motor Vehicle Department pursuant to 21 *Del. C.* Sec. 308. As such, he was not a law enforcement officer in the usual sense, and the State cannot be charged with his conduct as a defense to an act, of itself, constituting a crime which a defendant freely admits having committed.

Finally, Halko argues that he was deprived of his constitutional rights when he was not advised by the Attorney General's office at his first meeting with the Deputy Attorney General of his right against self-incrimination. The difficulty with this argument is that no evidence obtained at this first meeting was used against him in his trial. The only statements used against him were those made at his second meeting in the Attorney General's office at which time he was under oath and had been fully advised of his constitutional rights but, nevertheless, chose to make the statements, the admission of which into evidence he now complains.

Under the circumstances, we think the point is entirely without merit, and that Halko must be held to have waived his constitutional right against self-incrimination.

Furthermore, if this is not enough, it must be of some significance, at least, to note that at his trial Halko, himself, took the witness stand and repeated fully the statements testified to by the police officers.

For the foregoing reasons the conviction below is affirmed.