**STATE of Delaware, Plaintiff,**

**v.**

**Peter Harry COUSTENIS, Defendant.**

Superior Court of Delaware.

Kent County.

Sept. 12, 1967.

Sotiere S. Kapsalis, Wilmington, for defendant.

Grover C. Brown, Asst. Atty. Gen., Dover, for State.

QUILLEN, Judge.

This is the decision on defendant Coustenis' Motion To Suppress evidence prior to trial in the Superior Court.

The defendant was apprehended by Trooper J. Jerry Marvel based on information relayed by radio from Corporal George Dick that the radar equipment being used by the latter had indicated defendant's vehicle as traveling at a speed of 46 m. p. h. in a 35 m. p. h. speed zone. The Court will as-

sume, as does the letter of the Attorney General, that the apprehending officer Marvel had the motor vehicle in view at the time it was determined by radar that the speed limit was being violated. Defendant was subsequently charged, tried, convicted, and fined in Justice of the Peace Court No. 8 for speeding in violation of 21 Del.C. § 4169(b). Coustenis has appealed to this Court.

The defendant has moved to suppress the evidence obtained as a result of his arrest on the ground that he was illegally arrested. The statutory basis for his Motion is 21 Del.C. § 701 which provides that a police officer "may arrest *upon view* and *without warrant any person violating any* of the provisions of this title". The contention is that the apprehending officer was not arresting "upon view" because he was not directly aware of defendant's speed but, rather, was apprised only of radar evidence relayed to him by another officer.

No Delaware reported decision appears to be on point.[1] Any discussion must, however, center on the case of Halko v. State, 4 Storey 180, 175 A.2d 42 (Sup.Ct.1961). It is persuasive authority for a denial of defendant's Motion To Suppress. In the *Halko* case, the Supreme Court held that a driver was legally arrested "on view" where officers found him "dead drunk", slumped over the steering wheel, with the automobile's headlights on, even though the vehicle was not then operating. The officer's inferences from that situation and an identification by another motorist that the defendant was indeed the driver were held a sufficient basis for a legal arrest "on view".

■ The Supreme Court indicated the motor vehicle arrest statute should not be construed to require a "manifestly unreasonable course" to make an arrest. It pointed out that the statute was not a first impression enactment of the legislature but was rather merely a codification of the common law rule of arrest. The statute must therefore be construed within the traditional concept of the adaptability of the common law to present day needs. The statutory phrase "on view" should be given "a liberal and reasonable interpretation" as dictated by the Supreme Court in the *Halko* case. That decision in effect frees this Court from a narrow and artificial limitation based on a fictitious legislative intent in 1907. This Court should, of course, adopt the approach taken by the Supreme Court as to the interpretation of the statute.

■ In this case, on the facts necessarily assumed on this Motion, the arresting officer viewed the moving car at the time the radar records the speed. It is true that he relied on information furnished by another as to the speed. But the receipt of the information is direct in time and place, and the source of the information is a police associate performing a duty in conjunction with the arresting officer. Thus, the arresting officer in fact views the alleged violation even though a radar reading is used to establish the offense and even though he receives the result of the reading second hand. It is not the radar unit but the driver who commits the offense. While perhaps a difference of opinion in putting the facts of this case under the law set forth in the *Halko* case is reasonably possible, this case appears to this Court to be clearer on its facts than the *Halko* case.

The Supreme Court has said that the phrase "on view" should be given "a liberal

1. I am advised that Judge Terry in a Kent County case, State v. Moffitt, No. 17 Cr. A. 1953, faced a similar question and the matter was resolved only because the apprehending officer independently expressed the opinion that the defendant was speeding. It is apparent, however, that the intervening years have vastly altered the way society views radar and other similar devices for motor vehicle safety. See State v. Moffitt, 9 Terry 210, 100 A.2d 778 (Super.Ct.1953) where the very admissibility of the reading of a radar speed meter was in issue.

and reasonable interpretation". It is reasonable for the police to have the advantage of scientific advances in detecting and arresting motor vehicle violators. It is reasonable and an aid to accurate and safe detection for the police to use two man teams in order to make use of radar equipment to judge the speed of vehicles. It is reasonable to permit an officer to make an arrest when he views a speeding driver even though the speed is established by a machine read by a fellow police officer working with the arresting officer as part of a team. The very nature of the offense speeding demands a prompt arrest at the scene. It is unreasonable to prohibit the most efficient use of radar and the cause of adequate, accurate, and safe enforcement of the speed laws is hampered unreasonably if the officer taking the reading must personally make the arrest either at the time or after obtaining a warrant, if indeed the latter is possible. Since this Court is free to give a liberal interpretation to the phrase "on view", it should not be governed by arbitrary distinctions which have nothing to do with the ultimate merits of the case and the importance to aid the search for truth by the prompt identification and arrest of alleged violators.

The position taken herein is not only consistent with the *Halko* case but has sound foundation in the law of other jurisdictions. In State v. Cook, 194 Kan. 495, 399 P.2d 835, (Sup.Ct.1965), the Kansas Court upheld an arrest as made in the apprehending officer's presence where he had been relayed information as to the defendant's speed by officers in an airplane flying overhead clocking the automobile's speed by means of a stopwatch and road markings previously measured. The Kansas Court was aware of the difficulty which would be imposed on peace officers if the use of modern means of apprehending speeding motorists were too strictly restricted by the requirement of arrest "upon view" or "in the presence of" the arresting officer. An analogous team knowledge as a basis for arrest may also be found in Commonwealth v. McDermott, 347 Mass. 246, 197 N.E.2d 668 (1964).

In the case of a speeding arrest based on a radar reading, I hold that an arresting officer makes a legal arrest "upon view" even though the arresting officer does not take the radar reading, when the arresting officer is working in conjunction with a fellow policeman who takes the reading and when the arresting officer is in a position to observe the vehicle while it is being detected by radar.

The defendant's Motion To Suppress is denied. It is so ordered.