**STATE of Delaware**

v.

**Diane Johnson BROWN.**

Superior Court of Delaware, New Castle.

Jan. 31, 1972.

Joseph A. Hurley, Deputy Atty. Gen., Wilmington, for plaintiff.

Henry A. Wise, Jr., Wilmington, for defendant.

QUILLEN, Judge.

The defendant, Diane Johnson Brown, was found guilty by a jury of two counts of sale of marijuana. The defense has filed a "Motion for Verdict of Acquittal Notwithstanding the Verdict of the Jury or, in the Alternative, a New Trial". The defendant claims she was entitled to a directed verdict of acquittal because of entrapment and further that the charge to the jury placing the burden on the defendant on entrapment by a preponderance of the evidence was plain error requiring a new trial even in the absence of an exception.

The question of entrapment was a factual one and properly submitted to the jury. A jury may find predisposition from the circumstances surrounding the sale itself if the offer to buy is not accompanied by unusual persuasion. If any error was made, it was in the defendant's favor in submitting the entrapment question to the jury at all.

The instruction placing the burden on entrapment, an affirmative defense, on the defendant has general support in legal treatises. 1 Wharton's Criminal Evidence, § 33; 21 Am.Jur.2d, Criminal Law § 144. General statements are frequently misleading, however, because it is not always clear whether the burden being described is the burden of producing evidence or the burden of persuading the jury.

The defense of entrapment is, by legal time standards, one of relatively recent origin. The earliest cases evidently arose in the late Nineteenth Century. Mikell, The Doctrine of Entrapment in the Federal Courts, 90 U.Pa.L.Rev. 245–247 (1942); see also Board of Commissioners of Excise v. Backus, 29 How.Pr. 33, 42 (N.Y.Sup. Ct.1864) where certain dictum denies the existence of the defense. For those of us who long for the clearer standards often missing in modern law, the words of the Victorian New York Court may supply some historical warmth:

". . . The mode adopted by the plaintiffs to bring to light the malfeasance of the defendant, had no necessary connection with his violation of law. He exercised his own volition, independent of all outside influence or control. Even if inducements to commit crime could be assumed to exist in this case,

the allegation of the defendant would be but the repetition of the plea as ancient as the world, and first interposed in Paradise: 'The serpent beguiled me and I did eat.' That defence was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give indemnity to the culprit, and it is safe to say that under any code of civilized, not to say christian ethics, it never will."

■ The historical background suggests that perhaps we should look with great care on the doctrine of entrapment. There is, of course, no question that entrapment is a defense in Delaware as elsewhere. Halko v. State, 8 Storey 383, 209 A.2d 895, 899 (Sup.Ct.1965). But how the doctrine is applied and an understanding of the purpose it is designed to serve are vital to its meaningful existence.

■ It is true that Federal Courts have in some cases adopted a confusing split burden of proof, confusing especially in the context of a jury charge. United States v. Sherman, 200 F.2d 880 (2d Cir. 1952).[1] The accused is said to have the burden of showing by a preponderance of the evidence that a police agent induced the commission of the offense. If so, then the State has the burden of showing beyond a reasonable doubt that the accused was ready and willing, without persuasion, and awaiting a propitious opportunity. Gorin v. United States, 313 F.2d 641 (1st Cir. 1963).

This split burden is evolving to mean simply that the defense has the burden of production, in that it must support the claim of entrapment by some evidence suf-

ficient to raise a factual issue and, the State, once the factual issue is introduced, has the burden of persuasion, in that it must, to justify a conviction, persuade the jury beyond a reasonable doubt that there was no entrapment. See 1 Federal Jury Practice and Instructions, § 13.13, "Unlawful Entrapment"—Defined, pp. 290–292; United States v. Harrell, 436 F.2d 606 (5th Cir. 1970).

But no case has been cited which requires as a matter of Federal Constitutional law that the federal view of the burden of proof on entrapment is binding on the States. The freedom of the States to take a different view is illustrated by cases from the State of California, a State not known to be unduly strict on the rights of criminal defendants. People v. Valverde, 246 Cal.App.2d 318, 54 Cal.Rptr. 528 (1966); People v. Moran, 1 Cal.3d 755, 83 Cal.Rptr. 411, 463 P.2d 763 (1970); People v. Farley, 19 Cal.App.3d 215, 96 Cal.Rptr. 478 (1971); People v. Gossett, 20 Cal. App.3d 230, 97 Cal.Rptr. 528 (1971). See also State v. Cook, 263 N.C. 730, 140 S.E. 2d 305 (1965).[2] It is also interesting to note that a minority of the California Supreme Court does not think the issue of entrapment should be submitted to the jury but should be determined by the trial judge alone. See Chief Justice Traynor's dissent in People v. Moran, *supra*, at 97 Cal.Rptr. 415–418, at 463 P.2d 767–770.

The Delaware Superior Court, after some thought, has been instructing juries that the burden is on the defendant to establish the affirmative defense of entrapment by a preponderance of the evidence. This is consistent with Delaware law on the issue of self-defense (State v. Robinson, 3 Terry 419, 36 A.2d 27 (Ct. of Oyer & Terminer 1944) ) and on the issue of

---

1. The split burden approach in the *Sherman* opinion which this Court calls confusing was authored, by Judge Learned Hand, which, to say the least, makes this Court's appraisal open to question.

2. It is difficult to determine in other cases because of the legal questions involved

whether the Courts are speaking merely of the defendant's burden of production or are casting a persuasion burden on the defendant. Koptyra v. State, 172 So. 2d 628 (Fla.App.1965); Wyatt v. State, 77 Nev. 490, 367 P.2d 104 (1962); State v. Good, 110 Ohio App. 415, 165 N.E.2d 28 (1960).

mental illness (Longoria v. State, 3 Storey 311, 168 A.2d 695 (Sup.Ct.1961) ). Our Supreme Court has given careful consideration to the Delaware law on affirmative offenses and has expressly upheld our link with common law concepts notwithstanding trends favoring the defendant elsewhere. Quillen v. State, 10 Terry 114, 110 A.2d 445 (Sup.Ct.1955).

■ Entrapment is not like alibi. Halko v. State, 4 Storey 180, 175 A.2d 42 (Sup.Ct.1961). If the State cannot prove the defendant was present at the place alleged beyond a reasonable doubt, then the State can hardly prove the defendant committed a crime at the place alleged beyond a reasonable doubt. Presence is a necessary element of the crime. Notwithstanding some complex rationalization in some of the cases to the contrary, nonentrapment is not generally an element of a crime. If a private citizen without police connections does the same persuading, short of actual coercion or duress, as the police do when they entrap a defendant, the crime is committed notwithstanding the persuasion. The purpose of the doctrine of entrapment is to control impermissible police conduct. The purpose is not to make nonentrapment a necessary element of every offense regardless of its other elements. See Chief Justice Traynor's dissent in People v. Moran, *supra.* It is unfortunate that many courts have failed to recognize the philosophical basis of the entrapment doctrine and this failure may have led many state courts to follow blindly the federal precedent on burden of proof.

■ Delaware should not desert the standard that the burden of proof on entrapment is on the defendant. It is not a complex matter which requires the sophisticated mental gymnastics of a legal technician. It requires mere common sense. The illegal criminal activity associated on the broadest scale with organized crime and on the narrowest scale with corner drug sales is a threat to this Country's peace and good order. Criminal activity such as traffic in narcotics and dangerous drugs normally does not bring complaints from its willing victims. Police officers must therefore become seemingly willing participants in such crime in order to detect criminal activity. In the case of traffic of illegal drugs, law-abiding citizens would not ordinarily be seduced into becoming involved in the sale of illegal drugs by an officer's offer to purchase them. The line must be drawn between methods likely to persuade those otherwise unwilling to commit an offense from methods likely to persuade only those who are ready to do so. See again dissent in People v. Moran, *supra,* from which much of the above language is taken, although the context here is different. In drawing that line, law enforcement is not aided by making nonentrapment an additional element of every offense and placing the burden on the State to show the accused's mental predisposition beyond a reasonable doubt. The burden is more properly placed on the defendant who has committed the act forbidden by law to persuade through evidence why he did it.

Fortunately, in Delaware, we have recently had an excellent treatise on criminal law written in 1967 by the Governor's Committee for Revision of the Criminal Law. That distinguished Committee of lawyers, ably chaired by Bruce M. Stargatt, Esquire, wrote an excellent commentary to the Proposed Delaware Criminal Code. In the area of affirmative defenses, the proposed Code makes certain shifts in the burden of proof from the defense to the State. Some of the shifts are, in my opinion, unfortunate. But, it is noteworthy that on the issue of entrapment, the Committee held firm. The Commentary on § 241, the section of the Code dealing with entrapment at pages 107–108, includes the following pertinent language explaining both the purpose of the doctrine of entrapment and the proper allocation of the burden of proof:

"The reason for providing a defense of entrapment is not that the crime result-

ing from the entrapment is any less reprehensible than other crimes, but rather that the defense may deter wrongdoing by law-enforcement officials. It is, like the constitutional rules excluding illegally obtained evidence from criminal trials, the only really effective means of curbing police lawlessness. As much as we desire the detection and eradication of crime, we cannot condone official action which induces innocent people to commit crimes which they are not otherwise disposed to commit. To quote the Model Penal Code commentary:

"The harm done by increasing the risk of offending on the part of the innocent is great. Some persons will thus turn to crime and risk the pain of punishment at the call of law enforcement. When officers are engaged in persuading citizens to criminal acts, they are absent from their proper task of apprehending those offenders who act without encouragement. Such tactics spread suspicion in the community and can easily be employed as the expression of personal malice on the part of a police officer. Perhaps most important of all is the injury to the reputation of law enforcement institutions which follows the employment of methods shocking to the moral standards of the community.

Section 241 makes entrapment an affirmative defense, requiring the accused to satisfy the jury by a preponderance of the evidence that the entrapment was the procuring cause of his criminal act. We set this higher standard because the accused has admittedly done the act and is imputing misconduct to the police—an easy and not uncommon thing for a criminal defendant to do. Moreover, the officer or person cooperating with him must encourage commission of the crime for the purpose of criminal prosecution. This excludes a case in which a police officer urges someone to commit a crime, with intent, for example, to share in the profits of the crime, and another police officer happens upon the scene and makes the arrest.

Finally, § 241 looks to the culpability of the defendant as well as to the official misconduct. If he is 'otherwise disposed' to commit the offense, it will not avail him that he was encouraged to do so by the pofice officer. Thus a woman who is loitering for the purpose of offering herself for prostitution cannot raise the defense of entrapment if her offer is accepted by a police officer as part of the detection routine. This exception is not consistent with the underlying theory that entrapment is made a defense to discourage police immorality, yet it seems a fair way of balancing the public interest in preventing crime against the interest in maintaining police practices at a high level."

See also Model Penal Code § 2.10(2) and Comment 4 at 20–21 (Tent. Draft No. 9, 1959).

The public has just concern that persons who commit acts forbidden by law not be excused by complex legal rationalization which does not make common sense. In the area of entrapment, a Court created doctrine, common sense dictates that the persuasion burden of proof on the reason why the illegal act was committed should lie with the defendant who committed it.

The motion for a verdict of acquittal or a new trial is denied. It is so ordered.