PATRICIA ANN STILWELL, by Frank C. Stilwell, her Next Friend, Plaintiff Below, Appellant, v. RICHARD D. PARSONS, Defendant Below, Appellee, ALLSTATE INSURANCE COMPANY, an Illinois corporation, Garnishee Below, Appellee.

*(October 8, 1958.)*

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*John Merwin Bader* for plaintiff below, appellant.

*H. James Conaway, Jr.,* for defendant below, appellee.

*William Prickett* for garnishee below, appellee.

Supreme Court of the State of Delaware, No. 29, 1958.

WOLCOTT, J.:

This is an appeal by the plaintiff below from a judgment of the Superior Court for one of the defendants, Parsons, and from a separate order of the Superior Court quashing a garnishment proceeding against Allstate Insurance Company, the insurance carrier of the co-defendant, Lockerman, against whom the jury returned a verdict of $20,000. Lockerman is not a party to this appeal.

The two matters come before us as one appeal, but since they raise separate and distinct questions we will consider them *seriatim*.

1. *The Appeal From the Judgment for the Defendant Parsons.*

The action is one for personal injuries arising from an automobile accident between the vehicles of Lockerman and Parsons, as a result of which the plaintiff, a fourteen year old girl, was injured while crossing as a pedestrian the intersection of Kirkwood Highway and Ohio Avenue in the Town of Elsmere.

The Kirkwood Highway is a dual-lane highway between Wilmington and Newark and passing through the incorporated municipality of Elsmere just westerly of Wilmington. As a dual highway, it has one lane, of two-car width, limited to westbound traffic; and one lane, of two-car width, limited to eastbound traffic, which lanes are divided by a center strip not used for vehicular traffic.

At the time in question, the plaintiff in order to board a school bus to proceed easterly on Kirkwood Highway, had crossed the westbound lane of Kirkwood Highway at its intersection with Ohio Avenue and stood waiting on the dividing center strip before crossing the eastbound lane, in order to permit the Lockerman and Parsons cars to pass, which were approaching in an easterly direction the intersection.

The Parsons car was traveling on the lefthand side of the eastbound lane of Kirkwood Highway, or that portion nearest the dividing strip, while the Lockerman car was on the righthand side, or that portion farthest from the dividing strip. Both cars were then traveling approximately abreast.

As the cars approached the intersection, the Lockerman car drew ahead of the Parsons car and then cut to its left in front of the Parsons car, causing a collision which forced the Parsons car to run into the dividing strip and strike the plaintiff.

The jury returned a verdict against Lockerman and for Parsons. Plaintiff now seeks reversal of the judgment absolving

Parsons from liability on the ground that in submitting the question of his negligence to the jury, the trial court committed error of law.

The trial court permitted the jury to consider the question of Parsons' negligence on the basis of whether he had failed to keep a proper lookout, failed to keep his vehicle under proper control, or had been driving at an excessive rate of speed.

Plaintiff argues that the trial court should have further instructed the jury that Parsons would have been guilty of negligence *per se* if the jury found he had violated the provisions of either or both 21 *Del. C.* § 4130(a) or 21 *Del. C.* § 4131. The charge to the jury included no reference to these statutes which are set out hereafter:

21 *Del. C.* § 4130(a)

"Upon all highways of sufficient width, except upon one way streets, the driver of a vehicle shall drive the vehicle upon the right half of the highway and shall drive a slowmoving vehicle as closely as possible to the righthand edge or curb of such highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle subject to the limitations applicable in overtaking and passing set forth in this chapter."

21 *Del. C.* § 4131

"In crossing an intersection of highways or the intersection of a highway by a railroad right of way, the driver of a vehicle shall at all times cause such vehicle to travel on the right half of the highway unless such right half is obstructed or impassable."

Plaintiff urges the failure to give a charge based upon these statutes as error sufficient to require a reversal and the ordering of a new trial against Parsons.

Initially, we must dispose of the contention of Parsons that plaintiff may not argue the point to us because her attorney

neglected to object to the court's charge for the failure to so charge as required by Rule 51 of the Superior Court, *Del. C. Ann.*

Rule 51 provides in pertinent part as follows:

"\* \* \* No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. \* \* \*"

The facts of the matter are that prior to the drafting of his charge, the trial judge asked for and received requests for inclusion in his charge from counsel for both sides. Plaintiff's counsel requested that the jury be instructed upon the basis of the statutes referred to. At a conference in chambers during the course of which the trial judge ruled the statutes inapplicable to the circumstances, the following colloquy took place:

"The Court: Is there any objection to giving this case to the jury on speed, lookout, control and sudden turning?

"Mr. Bader: I think I should urge the statutory allegations in fairness to my client, your Honor.

*       *       *       *       *       *

"The Court: Well, under my ruling they would be out, wouldn't they?

"Mr. Bader: Yes, Sir."

We think it clear from this and other passages in the transcript that plaintiff's counsel requested that the instruction be given, and that the trial judge refused to give it on the ground of inapplicability of the statutes. We also think it clear that plaintiff's counsel did not abandon the point. The necessary conclusion is that the trial judge had the point in mind and made his considered decision against the plaintiff's contention.

Despite this situation, Parsons' counsel now would have us deny the right of plaintiff to have the adverse ruling reviewed because of failure to register an objection after the delivery of

the charge, an objection which under the circumstances would have been formal at best and sterile of any result.

■ We think the end Rule 51 seeks to attain—notice to the trial judge of a contrary position by a party to one of his rulings—was reached in this case. This being so, we will not hold the plaintiff to an exact compliance with formalities. The request was made, overruled and not abandoned. Justice would be ill-served to refuse review of the ruling by insistence upon ceremony. *Cf. United States v. General Motors Corp.*, 3 *Cir.*, 226 *F.* 2d 745; *City of Knoxville, Tenn. v. Bailey*, 6 *Cir.*, 222 *F.* 2d 520; *Thomas v. Union Ry. Co.*, 6 *Cir.*, 216 *F.* 2d 18; 5 *Moore's Federal Practice*, § 51.04. We, therefore, will consider the point.

The main thrust of plaintiff's argument in the Parsons appeal is directed to the refusal of the trial judge to include in his charge an instruction that 21 *Del. C.* § 4130(a) was applicable and that if Parsons had violated that section he would thereby have been guilty of negligence *per se*. The question narrows itself to the applicability of the section to this particular accident. If it is applicable, error was committed. If it is not applicable, then the judgment must be affirmed.

The court below refused to charge as requested in reliance, in part at least, on *Bentley v. Interior Milling Co.*, 8 *Terry* 453, 93 *A.* 2d 121. In that case the Superior Court was called upon to construe § 4130(a) (then 1935 *Code*, § 5626). The accident in the *Bentley* case had occurred on a dual highway at a point not within a city, town or village, which circumstance, it was held, precluded the argument that since plaintiff was driving on a one-way street, he was legally on the lefthand side of the northbound lane of the dual highway and therefore was not guilty of negligence *per se* in failing to drive on the right side of the road which, generally speaking, is required by the law of this state. The *Bentley* case, therefore, stands for the proposition that § 4130(a) is applicable to dual highways and that dual highways are not "streets", or at least are not streets outside the limits of a municipality.

Plaintiff argues that the *Bentley* case was misapplied by the trial court. It is said that far from being authority for the refusal of the requested charge, it in fact is authority for the converse. The argument is made that the *Bentley* case held that a dual highway is not a "street" under any circumstances and that, therefore, § 4130(a) requires vehicles proceeding on dual highways through municipalities to drive on the righthand side of the one-way lane of that highway. We cannot agree. The plaintiff seeks to read into the *Bentley* case more than is there. We do not follow the logic which, starting with the premise that a dual highway is not a street in the country, leads to the conclusion that it can never become a street when passing through a municipality. Such a conclusion not only is false logic, but also flies in the face of the facts of modern conditions. We do not suppose that in deciding lawsuits judges must disabuse their minds of facts known to all. Who is there who is so ignorant of modern traffic conditions as not to know that many state highways when passing through cities and towns take on the character of one-way streets over which traffic moves two, three and even four abreast. Kirkwood Highway, in fact, is a case in point, for as traffic comes nearer Wilmington and becomes heavier, it proceeds abreast and in accordance with the rules customarily governing the flow of traffic over one-way streets.

We think the language of § 4130(a) clearly permits the conclusion that the one-way portion of a dual highway may become a one-way street when it passes through a municipality. The particular language in question exempts from the requirement of driving on the right half of the highway those "highways which are one-way streets". Since the *Bentley* case held that a highway in the country can never be a street, it follows that the exception applies necessarily only to highways which are one-way when passing through a municipality. Kirkwood Highway certainly meets this test for its separate lanes are reserved for one-way traffic going in opposite directions. It follows, therefore, that both its westbound and eastbound lanes are

one-way streets at the scene of this accident. The physical distance which separates them does not alter their character, for a one-way street is an area which from one lateral limit to the other is devoted exclusively to traffic going in one direction only. Furthermore, there is no reason why different rules of traffic may not be prescribed for the congested area of a municipality, and for the less congested reaches of the rural areas. These differences in need, we think, are recognized by the provisions of § 4130(a) which has been held applicable to dual highways.

Plaintiff also cites *Sherr v. East*, 6 *Terry* 240, 71 *A.* 2d 262, but we think the case has nothing to do with the question. The *Sherr* case merely held that a cross-over between one-way lanes of a dual highway was not an intersection of highways.

■ Plaintiff also urges as error the failure of the trial court to give an instruction based upon 21 *Del. C.* § 4131. No argument in the brief is advanced in support of the assignment of error, and it may be assumed that the point is abandoned, or at least not seriously urged. In any event, we think the facts of the case deny the application of the statute.

The judgment for the defendant Parsons will be affirmed.

### 2. *The Appeal From the Order Quashing the Garnishment Proceedings.*

The facts pertaining to this phase of the appeal are that plaintiff recovered a verdict against the defendant Lockerman of $20,000. Allstate had theretofore issued a public liability insurance policy covering Lockerman with a top limit of $10,000 for each person suffering bodily injury.

After the entry of judgment in her favor, plaintiff caused to be issued against Allstate a writ of garnishment. Later, on motion of Allstate, the writ of garnishment was squashed, and the next day Allstate paid plaintiff $10,000 plus interest, the maximum amount called for by the policy.

The theory of plaintiff in support of the garnishment is that since Allstate under the terms of its policy undertook the defense of her claim against its insured, Lockerman, and since the claim could have been settled prior to judgment for an amount within the policy limits which Allstate refused to do, Allstate has now become liable to Lockerman for the difference between the policy limit and the amount of the judgment recovered against Lokerman, viz., the sum of $10,000. Plaintiff, therefore, seeks to garnish this "debt" of Allstate owed to her debtor, Lockerman.

We brush aside a contention of Allstate concerning certain alleged procedural defects in the garnishment in this case. Plaintiff's argument is susceptible to a short and simple answer on the merits.

If Lockerman has any claim against Allstate, a matter which has not as yet been determined by litigation, that claim is one sounding in tort based on Allstate's failure to use good faith or due care in settlement negotiations with plaintiff prior to trial. It seems to be clear that liability of an insurance carrier to its policyholder in excess of policy limits is based on the tortious conduct of the insurance carrier, which under the policy has sole control of the defense. See *Annotation,* 131 A. L. R. 1499.

10 *Del. C.* § 3502 provides in part as follows:

" * * * Insurance companies shall not be liable to attachment, except only as to moneys due in consequence of the happening of the risk provided for in a policy of insurance. * * * "

10 *Del. C.* § 3502 makes all corporations doing business in the state subject to the attachment laws except banks, savings institutions and loan associations, which are fully exempt, and insurance companies, which are exempt to the extent quoted above.

Allstate has fully discharged its obligations under its policy to Lockerman for all "moneys due in consequence of the

happening of the risk". That risk was the bodily injury suffered by this plaintiff. Allstate had contracted to pay for the injury up to the amount of $10,000. This, it has done. There remains, therefore, no moneys due from it in consequence of that risk. It follows, therefore, that Allstate, having discharged its obligation in that respect, may claim the statutory exemption from attachment granted all insurance companies who have paid over the sums they contracted to pay by issuing their policies.

The judgment quashing the attachment will be affirmed.