No. 46,025

DONNIE RAY GILLEY, a minor, by and through Franklin L. Gilley, Father and Guardian of the Estate and Person of Donnie Ray Gilley, *Plaintiff-Appellant*, v. WILLIAM L. FARMER, JR., et al., *Defendants*, NATIONAL INDEMNITY COMPANY, a Corporation, *Garnishee-Appellee*.

FRANKLIN L. GILLEY, *Plaintiff-Appellant*, v. WILLIAM L. FARMER, JR., et al., *Defendants*, NATIONAL INDEMNITY COMPANY, a Corporation, *Garnishee-Appellee*.

DONNIE RAY GILLEY and CHERYL LYNN GILLEY, minors, by and through Franklin L. Gilley, Father and guardian of the estate and persons of said minors, and FRANKLIN L. GILLEY, individually, *Plaintiffs-Appellants*, v. WILLIAM L. FARMER, JR., et al., *Defendants*, NATIONAL INDEMNITY COMPANY, a Corporation, *Garnishee-Appellee*.

(485 P. 2d 1284)

Opinion filed June 12, 1971.

*Robert H. Bingham*, of Weeks, Thomas, Lysaught, Bingham & Johnston, Chartered, of Kansas City, argued the cause, and *L. D. McDonald, Jr.*, of the same firm, was with him on the brief for the plaintiffs-appellants.

*Douglas Stripp*, of Watson, Ess, Marshall & Enggas, of Kansas City, Missouri, argued the cause, and *J. Milton Sullivant*, of Sullivant, Rushfelt, Mueller & Lamar, of Kansas City, Kansas, was with him on the brief for the garnishee-appellee National Indemnity Company.

*Cyrus W. Long*, of Kansas City, was on the brief for defendants, William L. Farmer, Jr., William L. Farmer and Dorothy Farmer.

The opinion of the court was delivered by

FONTRON, J.: These three lawsuits, which have been consolidated for purposes of appeal, arose out of a collision in Wyandotte County, between cars driven by Franklin L. Gilley and William L. Farmer, Jr.

The details of the accident are unimportant so far as the questions now before us are concerned. It is sufficient to say that Mrs. Gilley was killed in the accident and Mr. Gilley, his minor son, Donnie Ray, and another passenger in the Gilley car, Roy Roberts, were all injured. Three lawsuits were filed by Mr. Gilley to recover damages: (1) For Donnie's injuries, (2) for his own injuries and for damage to his car and (3) for the death of Mrs. Gilley. These actions were tried and resulted in judgments against Farmer totaling $45,956.13. Farmer did not appeal from the judgments.

For convenience we shall henceforth refer to the three cases as but a single case, to Gilley either by name or as plaintiff, and to Farmer by his own name or as the defendant.

Farmer was insured by the National Indemnity Company, (hereafter referred to as National, or the insurer or garnishee) under an automobile liability policy with limits of $5,000/$10,000/$5,000. These limits imply, as we understand the terms, that insurance coverage was restricted to $5,000 for personal injury to any one person, to $10,000 for injuries sustained by two or more persons in a single accident, and to $5,000 property damage.

Since the judgments were entered against Farmer, the insurer paid the car damage in full, amounting to $2300, and has also paid $9,500 on the personal injury judgments, a five hundred dollar out-of-court settlement having been effected with Roy Roberts, the other passenger in the Gilley car.

After payment of the foregoing amounts, the balance due on the plaintiff's judgment—amounting to $33,656.13—remained unpaid. Garnishment proceedings were therefore initiated against the insurer. The garnishee, National, responded to the garnishment order by filing an answer conceding an indebtedness of only $75, which was admittedly due for damage to clothing that National had inadvertently overlooked and which it offered to pay on proper court order.

Gilley filed a reply, alleging that National had been guilty of negligence and bad faith in handling his claim in several particulars, and in failing to settle the same within the limits of its policy with Farmer, and that National was therefore liable for the amount of the excess judgment. Gilley demanded judgment for the excess, for its attorneys' fees and for punitive damages. Farmer also filed a reply with similar allegations of negligence and bad faith and demanded that National be ordered to pay the balance due and owing on the judgment to Gilley. National thereupon moved to strike both replies.

The trial court, treating the motion to strike as a motion for summary judgment, sustained the same and entered judgment in favor of the garnishee as a matter of law. In sustaining the motions, the court found that (1) a judgment creditor has no right to proceed by garnishment against his judgment debtor's liability insurer for a judgment exceeding the policy limits on the grounds of negligence, bad faith, and failure to settle within policy limits; (2) such claim, whether founded in tort or breach of contract, is unliquidated and not a debt subject to garnishment under § 60-724 K. S. A.; (3) once issues are joined in a garnishment action,

a motion for summary judgment is not an unauthorized pleading.

Mr. Gilley has appealed from the trial court's ruling, and divides his argument into two main parts. Mr. Farmer has filed no appeal but his counsel's name appears on appellant's brief.

Plaintiff first contends the trial court erred in rendering summary judgment. The grounds on which this argument rests are (1) a motion to dismiss is an unauthorized pleading not recognized in garnishment proceedings and (2) pretrial discovery had not been completed.

K. S. A. (now K. S. A. 1970 Supp.) 60-718 provides that the garnishee shall file an answer to the garnishment order stating the facts in relation thereto, and that either the plaintiff or the defendant, or both, may file a reply to the answer. The statute further provides that if a reply is filed the court shall try the issues joined.

This statute does not mention a motion to strike the reply to the garnishee's answer, nor is reference made to such a motion elsewhere in the garnishment statutes. Accordingly, the plaintiff reasons that the trial court lacked authority to act on National's motion to strike the replies and to enter summary judgment in the garnishee's favor.

To support this position Mr. Gilley relies primarily on *Domann v. Pence,* 185 Kan. 702, 347 P. 2d 373. This case was also an action in which the plaintiff had secured a judgment for damages arising from an auto accident for an amount exceeding the defendant's policy limits. When the excess remained unpaid, the plaintiff garnished defendant's insurance carrier, which answered, in turn, that it had paid the amount of its policy, and was not indebted to the defendant. The plaintiff excepted to the garnishee's answer, alleging bad faith and negligence on the part of the insurer in its investigation, preparation, and trial of the damage action. The insurer then filed a demurrer to the exceptions, which was overruled by the trial court.

On appeal, this court held that a garnishment proceeding was a special and extraordinary remedy whose procedures were governed by statute (then, G. S. 1949, 60-940 to 60-965); that those procedures were exclusive and did not include a demurrer; hence we said the demurrer was properly overruled.

The *Domann* case was decided prior to the enactment of the present Code of Civil Procedure. The underlying philosophy of the Code is expressed in K. S. A. 60-102:

"The provisions of this act shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding."

As we have said, the trial court treated National's motion to dismiss as a motion for summary judgment under K. S. A. 60-256 and such, we believe, was proper. The motion disclosed on its face that it was filed pursuant to 60-256 on the twin grounds that no genuine issue of material fact existed and that the garnishee was entitled to judgment as a matter of law. These are the circumstances under which the Code envisions the use of summary proceedings. (*Hartman v. Stumbo,* 195 Kan. 634, 638, 408 P. 2d 693; *Board of Satanta v. Grant County Planning Board,* 195 Kan. 640, 648, 408 P. 2d 655.)

The fact that National's motion may have been mislabeled as a motion to strike the reply, rather than as one for summary judgment, is of small consequence. The substance of a motion, rather than the title, will generally determine its character. The court was warranted in looking beyond the form to the substance of the garnishee's motion, and in treating it accordingly.

Did the trial court have authority to rule on the garnishee's motion and to enter summary judgment pursuant thereto? We believe that it did.

Judge Gard, in his excellent work, Kansas Code of Civil Procedure Annotated, speaks of the motion for summary judgment as "a most utilitarian device, designed to complete the overall scheme for making pretrial procedures effective in bringing about, if possible, an expeditious disposition of litigation without needless waste of time in trial formality." (p. 258.) Thus it is, that summary judgment procedures implement the policy set forth in K. S. A. 60-102 and no reason is suggested for prohibiting their use in garnishment proceedings, in which proceedings the court is to determine the issues either by admissions in the answer or reply, or by default, or by its own findings on controverted issues. (K. S. A. 60-721.)

The argument that pretrial discovery was not completed presents no great problem, even though a motion had been filed for the production of documents. We fail to see how those records would have had any bearing on the legal issue determined by the court. The issues had been framed by the pleadings—in this case, the answer, the reply and the motion to strike—and fairly presented the legal question with which the court was faced.

We pass to the nub of this lawsuit: Does the procedure of garnishment provide a remedy to a judgment creditor against the

insurance carrier of his judgment debtor for recovering that portion of a judgment rendered in excess of the carrier's policy limits?

We need waste little time in discussing the liability of an insurance carrier to its insured under the circumstances which are alleged in the plaintiff's reply to the garnishee's answer. The controlling rule was clearly defined by Justice O'Connor in the recent case of *Bollinger v. Nuss*, 202 Kan. 326, 449 P. 2d 502. The central thrust of our holding is epitomized in Syllabus 2:

"In this jurisdiction a liability insurer may be held liable in excess of its undertaking under the policy if it acts negligently or in bad faith when considering offers to compromise the claim against the insured for an amount within policy limits."

Indeed, National does not challenge the rule just stated; it questions only the availability of garnishment as an appropriate vehicle for determining the question of liability.

This court has never been squarely faced with this specific issue; hence, we have never squarely passed on it. However, tacit approval of the practice might be inferred from a few of our judicial utterances in recent years.

In *Bollinger*, the insurer's liability for payment of an excess judgment obtained against its insured was tested by means of a garnishment proceeding brought against the insurance carrier. However, we did not have to consider whether such procedure was proper, because, as the opinion pointed out, that issue had been abandoned by the insurer.

Our opinion in *Domann v. Pence*, supra, is fraught with some ambiguity. In one breath we said the trial court should have required the parties to proceed with the trial of the garnishment issue as the statute required, while in the next we said that all we were holding was that the demurrer was unauthorized and improper in the garnishment proceeding.

Our latest expression is found in *In re Estate of Lohse v. Rubow*, 207 Kan. 36, 483 P. 2d 1048. That was an action to remove Rubow as administrator of the estate because of his refusal to file suit against the decedent's insurance carrier to recover an excess judgment rendered against the estate. The trial court refused to remove Rubow and this court, in affirming the judgment, said that if action against the insurer was warranted, "the judgment creditor has available the remedy of garnishment." (p. 41.) This language was not essential to the opinion but it might be said to evidence some clue as to the court's thinking on the subject.

Our Code does not specifically denote what claims of indebtedness may be subject to garnishment. Instead, the legislative approach to that question was by way of exceptions.

K. S. A. 60-724 provides in pertinent part:

"No judgment shall be rendered in garnishment by reason of the garnishee:
(2) holding moneys on a claim not arising out of contract and not liquidated as to amount . . ."

Apparently this language has never been construed, but as we read and understand it, the exception relates to an unliquidated tort claim.

National contends primarily that whatever cause of action Farmer may have to recover for the excess judgment standing against him, it is one which is grounded in tort. If this argument is valid, then Farmer's claim falls within the exception and is not subject to garnishment.

A number of cases which have arisen in other jurisdictions support the position taken by National. (*Steen v. Aetna Casualty,* 157 Colo. 99, 401 P. 2d 254; *Pringle v. Robertson,* ___ Or. ___, 465 P. 2d 223; *Paul v. Kirkendall,* 6 Utah 2d 256, 311 P. 2d 376; *Stilwell v. Parsons,* 51 Del. 342, 145 A. 2d 397.) Other courts have also held that a cause of action against an insurer for negligence in handling a claim against its insured, sounds in tort. (*Dillingham v. Tri-State Ins. Co.,* 214 Tenn. 592, 381 S. W. 2d 914; *Murray v. Mossman,* 56 Wn. 2d 909, 355 P. 2d 985.)

Despite the respectability of the authorities cited, they provide no precedent here. Whatever the rule may be elsewhere, this court has been consistent in holding that where a person contracts to perform work or to render a service, without express warranty, the law will imply an undertaking or contract on his part to do the job in a workmanlike manner and to exercise reasonable care in doing the work. (*Crabb v. Swindler, Administratrix,* 184 Kan. 501, 337 P. 2d 986.)

Where negligence on the part of the contractor results in a breach of the implied warranty, the breach may be tortious in origin, but it also gives rise to a cause of action *ex contractu.* An action in tort may likewise be available to the contractee and he may proceed against the contractor either in tort or in contract; or he may proceed on both theories. (*Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887.) However, his petition need not state whether his action is based upon implied contract or tort.

(*Ablah v. Eyman,* 188 Kan. 65, 680, 365 P. 2d 181, 90 A. L. R. 2d 766.)

In *Crabb v. Swindler, Administratrix,* supra, we applied the foregoing principles to a situation where damage was occasioned by plumbing which had been defectively installed. In that case it was said:

". . . A breach of an implied warranty to use reasonable and appropriate care and skill, that is, to do a workmanlike job, usually results from the negligence or failure to use due care and skill in performing the particular work . . . Hence, the tortious or negligent acts alleged may be considered as allegations of the breach of the implied warranty. . . ." (p. 505.)

The rule has been followed in other similar instances. (See, *McCoy v. Wesley Hospital & Nurse Training School,* 188 Kan. 325, 362 P. 2d 841; *Price, Administrator v. Holmes,* 198 Kan. 100, 422 P. 2d 976.)

The present case comes within the ambit of this rule. Implicit in the usual liability insurance policy is a covenant on the part of the insurer that, in defending or settling a claim against its insured, it will act in good faith and with reasonable care for his interests. (*Communale v. Traders & General Ins. Co.,* 50 C. 2d 654, 328 2d 198; 68 A. L. R. 2d 883.)

The briefs of both parties discuss this question: Is Farmer's claim against his insurance carrier liquidated or unliquidated? The plaintiff asserts the claim is liquidated in the amount of the excess judgment, while the garnishee takes the position that whatever its liability to the insured may be, the amount thereof is unliquidated.

We need not decide the dispute. The exception defined in K. S. A. 60-724(2) refers only to indebtedness arising from tort claims which remain unliquidated—not claims *ex contractu.* Hence, it is immaterial whether the debt due Farmer is liquidated or whether it is not.

In a recent case, *Stamps v. Consolidated Underwriters,* 205 Kan. 187, 468 P. 2d 84, the remedy of garnishment was employed to determine the liability of the insurance carrier to pay judgments recovered against its insured within the policy limits. While no judgment was involved which exceeded the face of the policy, we see little distinction in principle between a garnishment proceeding to establish an indebtedness within policy limits and one to establish an indebtedness outside these limits arising from a breach of the insurer's duty to exercise reasonable care and good

faith in settling a claim against the insured. In either case the action sounds in contract.

Many years ago this court, in *B. & M. R. Rld. Co. v. Thompson*, 31 Kan. 180, 1 Pac. 622, speaking through Justice Brewer stated:

". . . Garnishee proceedings mean this: the creditor takes the place of the debtor. 'Only this and nothing more.' The former takes only that which the latter could enforce. . . ." (p. 196.)

This passage was quoted with approval in *National Surety Corporation v. Gillette*, 194 Kan. 604, 606, 400 P. 2d 681.

Under the doctrine expressed in *Bollinger*, Mr. Farmer could have maintained an action against his insurer for breach of its implied agreement to use reasonable care and to act in good faith in the handling and compromise of claims, and in the consideration of offers to settle within policy limits. In the present garnishment action Mr. Gilley is wearing the shoes of Mr. Farmer.

Under the circumstances appearing in this case, we hold that garnishment was a proper procedure for determining the garnishee's indebtedness.

The judgment is reversed with directions to proceed with trial of the issues which have been joined in accordance with the views expressed in this opinion.

FROMME, J., not participating.