**Sherman A. CARTER, Petitioner,**

v.

**Elizabeth NEAL, Respondent.**

**No. 94–62–RRM.**

United States District Court, D. Delaware.

Dec. 12, 1995.

Sherman A. Carter, pro se.

Loren C. Meyers, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for respondent.

McKELVIE, District Judge.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

This is a habeas corpus case. In September, 1985, Sherman Carter was charged by indictment with trafficking in heroin, possession of cocaine with intent to distribute, and possession of marijuana. On October 6, 1986, Carter pled guilty under a plea agreement with the prosecution. The plea agreement described the charge to which Carter pled guilty as "trafficking in a non-narcotic [substance]."

The prosecution expressed some reservations about Carter pleading guilty to this charge because it only had evidence that Carter was trafficking in heroin, a narcotic substance. Plea Transcript ("Plea Tr.") at 3–4. However, Carter's defense counsel stated his understanding that Carter was pleading guilty to a lesser included offense under the Delaware drug trafficking statute. Plea Tr. at 7–8. In addition, the prosecution, the judge, and defense counsel acknowledged that the advantage to Carter of phrasing the charge in this manner was that Carter would continue to be eligible for bail until sentencing, whereas a plea to trafficking in a narcotic substance would eliminate the possibility of bail. Plea Tr. at 4, 6, 8–9, 13; *see* 11 Del.C. § 4331(a) (stating that persons convicted of trafficking in a narcotic substance must be incarcerated pending sentencing).

Under the plea agreement, the prosecution was to: 1) recommend that Carter receive the minimum mandatory prison term of 3 years; 2) recommend that Carter's bail pending sentencing remain the same; and 3) enter *nolle prosequis* on the other counts of the indictment. In turn, Carter agreed to forfeit cash that the police had seized at the time of his arrest.

Three months later, Carter was sentenced by Superior Court Judge Richard S. Gebe-

lein. At the sentencing hearing, the prosecution stated:

Your honor, Sherman Carter is an example of what trafficking is all about. He had fifty glassine bags of heroin. He had transported the heroin from New York to Wilmington. He is not a common street dealer but a transporter.

Heroin is a serious drug and I think it should be taken seriously. According to his [presentence] interview, Mr. Carter wants us to believe he bought the drugs as a birthday present to himself, fifty bags. Mr. Carter wants us to believe he doesn't have a drug problem.

Also, he wants us to believe he never had been arrested outside the State of Delaware. As the report shows, Mr. Carter has a long history of narcotics addiction and has been convicted of drug charges in Massachusetts as well as charges dealing with armed robbery, [and he] has charges pending to distribute cocaine and heroin.

He wants to conceal all the incriminating information and does not want to accept the dangerous situation he is in. Therefore, he cannot and will not deal with his problem.

The State will recommend no more than the three years minimum mandatory[,] but we would like the Court to know we had no information of Mr. Carter's drug and other related criminal charges in Massachusetts. We believe Mr. Carter is indeed a dangerous individual.

Sentencing Transcript ("Sent.Tr.") at 3–4.

Carter's defense counsel objected to the prosecution's comments. Sent.Tr. at 4. However, defense counsel acknowledged that the prosecution was recommending to the judge that Carter receive no more than 3 years. Sent.Tr. at 4. In addition, defense counsel admitted that Carter was carrying heroin and cocaine at the time of his arrest. Sent.Tr. at 4–5. Judge Gebelein questioned Carter concerning his prior record and the reason he had 50 glassine bags of heroin. Sent.Tr. at 5–8. Then Judge Gebelein sentenced Carter to 20 years imprisonment, the first 3 of which were mandatory, suspended after 8 years for 12 years probation. Sent.

Tr. at 8–9. Carter did not appeal his conviction or his sentence.

On October 27, 1988, Carter filed a motion for postconviction relief in the Delaware Superior Court pursuant to Superior Court Criminal Rule 61. In this motion, Carter argued that the prosecution violated the plea agreement by impliedly asking for a more lengthy sentence. The Superior Court denied the motion on the merits. *State v. Carter,* Cr.A. No. IN85–08–0679–0681 (Del.Super.Ct. Nov. 22, 1988). Carter appealed to the Delaware Supreme Court. The Delaware Supreme Court held that Carter had waived his claim that the prosecution violated the plea agreement because he failed to raise that claim on appeal, citing *Stilwell v. Parsons,* 51 Del. 342, 145 A.2d 397, 402 (1958). *Carter v. State,* No. 491, at 2 (Del. Supr.Ct. Nov. 1, 1989) (*Carter 1*). In addition, the Supreme Court dismissed Carter's remaining claims on appeal because he had not raised those claims in the Superior Court. *Id.*

On December 15, 1989, Carter filed a second motion for postconviction relief in the Delaware Superior Court. In this second motion, he claimed that his plea was invalid because the offense to which he pled—trafficking in a nonnarcotic substance—was not an offense under state law. Carter also claimed that his defense counsel had been ineffective for allowing him to plead to a nonexistent offense. The Superior Court summarily denied this second motion, and Carter appealed to the Delaware Supreme Court. The Delaware Supreme Court held that Carter's claims were procedurally barred by Superior Court Criminal Rule 61(i)(2) because he failed to raise these arguments in his first post-conviction motion. *Carter v. State,* No. 47 (Del. Mar. 8, 1990) (*Carter 2*). Rule 61(i)(2) states that "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred, unless consideration of the claim is warranted in the interest of justice." In addition, the Supreme Court rejected both claims on the merits. *Id.*

On January 11, 1994, Carter filed this petition for a writ of habeas corpus and requested leave to proceed *in forma pauperis.* In

his petition, Carter makes three claims for relief. First, he alleges that his plea was illegal because he pled guilty to a nonexistent offense under state law. Second, he alleges that his defense counsel was ineffective for allowing him to enter the illegal plea. Third, he alleges that the prosecution violated the plea agreement because it "gave only lip service when it asked for the minimum sentence."

In its answering brief, respondent argues that Carter's illegal plea claim is barred from review on habeas corpus by the retroactivity principles announced in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In addition, respondent argues that Superior Court Criminal Rule 61(i)(2) is an independent and adequate state ground under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), barring habeas corpus review of Carter's illegal plea and ineffective assistance of counsel claims. Finally, respondent argues that Delaware procedural law, which holds that claims not raised on appeal are waived, is an independent and adequate state ground under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), barring habeas corpus review of Carter's claim that the prosecution violated the plea agreement. Respondent further argues that Carter fails to establish either cause for his procedural defaults or prejudice resulting therefrom.

In his reply, Carter argues that the Delaware Superior Court never barred his claims procedurally under Rule 61(i)(2). In addition, he claims he "took numerous steps to bring to light the reasons why his issues were not properly raised," although he only specifies that he sent "numerous letters and motions" to the trial judge "with no success." Carter also refers to an attached August 21, 1989 letter to the Clerk of the Delaware Supreme Court. In the August 21, 1989 letter, Carter appears to state that he could not properly appeal his claim in *Carter 1* that the prosecution violated the plea agreement because he was unable to obtain transcripts of the sentencing. Carter further states in his reply to the state's answer:

"After a[n] unbias[ed] examination as to the procedural foul ups of both the peti-

tioner and the state on numerous levels it would seem that this court should rule a tie as to both factions. I would suggest that the court [bypass] the technic[al] problems of both, but to fairly examine that which has not been properly weighed by the state court."

Thus, it appears Carter is arguing that this court should decide his claims despite his procedural errors. This is the court's decision on Carter's petition.

## II. *DISCUSSION*

### A. *Illegal Plea Claim*

Carter presented his first claim, that his plea was illegal because he pled guilty to a nonexistent offense, to the Delaware Supreme Court in *Carter 2*. Thus, he has exhausted state remedies with respect to this claim. *See Swanger v. Zimmerman*, 750 F.2d 291 (3d Cir.1984). However, respondent argues that Carter's illegal plea claim would require the court to announce a "new" rule, thus barring habeas corpus review of his claim under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny. The court must decide whether Carter seeks application of a "new" rule before it addresses the merits of his claim. *See Teague*, 489 U.S. at 301, 109 S.Ct. at 1070; *Bailey v. Snyder*, 855 F.Supp. 1392, 1401 (D.Del.1993), *affd. sub nom, Flamer v. State of Delaware*, 68 F.3d 736 (3d Cir.1995).

A case announces a new rule if the result "breaks new ground," "imposes a new obligation on the States," or was not "dictated by precedent existing at the time defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. If a rule is new within the meaning of *Teague*, a court should not apply it retroactively unless it falls under one of two exceptions. *Id.* at 307, 109 S.Ct. at 1073. The first exception permits retroactive application of a new rule that decriminalizes any class of conduct. *Gilmore v. Taylor*, 508 U.S. 333, ——, 113 S.Ct. 2112, 2119, 124 L.Ed.2d 306 (1993); *see Teague*, 489 U.S. at 307, 109 S.Ct. at 1073. The second exception permits retroactive application of a new rule that implicates the likelihood of obtaining an accurate determination of factual guilt. *Butler v. McKellar*,

494 U.S. 407, 416, 110 S.Ct. 1212, 1218, 108 L.Ed.2d 347 (1990), *see Teague,* 489 U.S. at 307, 109 S.Ct. at 1073.

■ The court agrees with respondent that Carter is seeking the benefit of a new rule. Carter's conviction became final in 1987. Reasonable jurists examining the case law existing at that time would have concluded that Carter's plea passed constitutional muster. In *People v. Foster,* 19 N.Y.2d 150, 278 N.Y.S.2d 603, 604, 225 N.E.2d 200, 201 (1967), the defendant was charged with first degree manslaughter. However, as part of a plea agreement, he pled guilty to "attempted manslaughter," which carried a less severe penalty. On appeal, the defendant sought to vacate his conviction as a violation of due process because he pled guilty to a "nonexistent crime." The New York Court of Appeals (the highest court in the State of New York) held that "[w]hile there may be a question whether a plea to attempted manslaughter is technically and logically consistent, such a plea should be sustained on the ground that it was sought by defendant and freely taken as part of a bargain which was struck for the defendant's benefit." *Id.* at 606, 225 N.E.2d at 203.

Subsequent courts have also concluded that a defendant cannot attack a guilty plea based on a negotiated plea agreement when the defendant receives a benefit as part of the bargain. *See, e.g., People v. Bernard,* 656 P.2d 695, 697 (Colo.1983); *State v. Majors,* 94 Wash.2d 354, 616 P.2d 1237, 1238 (1980). The Delaware Supreme Court has also addressed this issue and held that a defendant forfeits his right to challenge a plea of guilty to a "nonexistent" offense when that plea is the result of a "voluntary and intelligent plea bargain." *Downer v. State,* 543 A.2d 309, 312 (Del.1988). Although the Delaware Supreme Court decided this issue shortly after Carter's conviction became final, its decision rests on *Foster* and *Bernard* and is a strong indication of the manner in which a court at the time Carter's conviction became final would have addressed his claim.

Against this background, this court "cannot say that all reasonable jurists would have deemed themselves compelled to accept [Carter's] claim in [1987]." *Graham v. Collins,*

506 U.S. 461, 467, 477, 113 S.Ct. 892, 898, 903, 122 L.Ed.2d 260 (1993); *see Bailey,* 826 F.Supp. at 813. Accordingly, Carter's claim would require the court to announce a new rule within the meaning of *Teague.* In addition, Carter has not articulated, nor is the court aware of, any basis to believe that one of the two exceptions to *Teague* would apply to his claim. Thus, this court cannot review Carter's illegal plea claim in a federal habeas corpus proceeding.

## B. *Ineffective Assistance of Counsel Claim*

Carter presented his second claim, that his defense counsel was ineffective because counsel allowed Carter to plead guilty to a nonexistent offense, to the Delaware Supreme Court in *Carter 2.* Thus, he has exhausted state remedies with respect to this claim. *See Swanger v. Zimmerman,* 750 F.2d 291 (3d Cir.1984). However, respondent argues that Rule 61(i)(2) constitutes an "independent" and "adequate" state procedural ground under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), thus precluding federal habeas review of Carter's ineffective assistance of counsel claim unless Carter can establish cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to hear his claim. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

■ When a state procedural default bars a petitioner from presenting his constitutional claims in state court, a federal court in a habeas corpus proceeding must determine whether the state procedural rule is "independent" of the federal claims and "adequate" to preclude federal review. *Coleman,* 501 U.S. at 734–35, 111 S.Ct. at 2556–57; *see also Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). To determine whether a rule is "independent," a federal court must ascertain whether the last state appellate court decision applying the rule "fairly appears to rest primarily on federal law" or whether it appears to be "interwoven with the federal law." *Coleman,* 501 U.S. at 734–35, 111 S.Ct. at 2556–57. If so, a federal court may hear a petitioner's claims unless the state court "clearly and expressly" states

that the decision rests independently on the state rule. *Id.*

Superior Court Criminal Rule 61 governs the procedure for collaterally attacking a conviction in the Delaware state courts. Subdivision (i) sets out a number of situations in which a petitioner is barred from seeking postconviction relief under Rule 61:

**(i) Bars to Relief.**

**(1) Time Limitation.** A motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively available right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or the United States Supreme Court.

**(2) Repetitive Motion.** Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim is warranted in the interest of justice.

**(3) Procedural Default.** Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows

> (A) Cause for relief from the procedural default and
>
> (B) Prejudice from the violation of the movant's rights.

**(4) Former Adjudication.** Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

**(5) Bars Inapplicable.** The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of the pro-ceedings leading to the judgment of conviction.

**(6) Movant's Response.** If ordered to do so, the movant shall explain on the form prescribed by the court why the motion for postconviction relief should not be dismissed or grounds alleged therein should not be barred.

Rule 61(i)(2) thus bars a claim raised in subsequent postconviction motions that a petitioner did not raise in his first such motion, "unless consideration of the claim is warranted in the interest of justice." Rule 61(i)(5) makes the bar of Rule 61(i)(2) inapplicable if the petitioner claims that the court lacked jurisdiction or that a "miscarriage of justice" resulted from a "constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings."

█ The Delaware Supreme Court's application of Rule 61(i)(2) in *Carter 2* does not appear to rest primarily on or interweave with federal law. The Supreme Court simply stated that Carter's claims "with regard to the plea agreement were available and were known, or should have been known, to Carter at the time of his first motion for postconviction relief." The Court also stated that Carter failed to make a showing, in accordance with Rule 61(i)(2), that consideration of his claims "is warranted in the interest of justice." In considering whether the "interest of justice" exception applied, the Court made no mention of the merits of Carter's claim. Finally, the Court did not mention Rule 61(i)(5), so there is no other indication that it considered the merits of Carter's claims.

It might appear at first glance that the exceptions to Rule 61(i)(2)—the "interest of justice" standard and the "fundamental fairness" standard of Rule 61(i)(5)—require an antecedent ruling on the federal constitutional merits of a petitioner's claim. Thus, a federal court would not be precluded by Rule 61(i)(2) from reviewing a petitioner's claims. *See Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (holding that an Oklahoma rule excusing procedural default in cases of "fundamental trial error" was not independent of federal law so as to preclude direct review by the Supreme Court because

"the State ha[d] made application of the procedural bar depend on an antecedent ruling on federal law"). It is not clear that *Ake,* a direct review case, applies in the habeas corpus setting. *See Coleman,* 501 U.S. at 741, 111 S.Ct. at 2560 (stating that the Supreme Court has never applied the *Ake* rule in federal habeas). However, even if *Ake* applies in federal habeas, it can provide no relief to Carter.

The Delaware Supreme Court has consistently held that it must reach the question of whether a postconviction petitioner has defaulted his claims procedurally before it reaches the merit of those claims. *See, e.g., Bailey v. State,* 588 A.2d 1121, 1127 (Del. 1991); *Flamer v. State,* 585 A.2d 736, 747 (Del.1990); *Younger v. State,* 580 A.2d 552, 554 (Del.1990). Furthermore, the Court has explicitly defined the "interest of justice" and "fundamental fairness" standards without reference to the merits of a petitioner's constitutional claims. Instead, the Court defines each of these standards with respect to the type of constitutional violation asserted.

The Delaware Supreme Court has stated that in order to invoke the identical "interest of justice" provision of Superior Court Rule 61(i)(4), a petitioner must show that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish [the petitioner]." *Flamer,* 585 A.2d at 746. In *Bailey,* the Court further defined the word "authority" within this formulation to include whether the court had jurisdiction or whether new rules meeting the two-part retroactivity test of *Teague* have come into existence after petitioner's final appeal. *Bailey,* 588 A.2d at 1126 n. 5. Similarly, the Delaware Supreme Court has stated that the "fundamental fairness" exception of Rule 65(i)(5) "has been applied only in limited circumstances, such as when the right relied upon has been recognized after the direct appeal." *Younger,* 580 A.2d at 555. Neither of these standards addresses the merits of a constitutional claim brought by a postconviction petitioner. Rather, they identify types of claims—essentially jurisdictional and retroactive claims—that can be exceptions to the procedural bar of Rule 61(i)(2).

In *Carter 2,* the Delaware Supreme Court plainly stated that it relied independently on Rule 61(i)(2). The Court stated that "[a]s a result [of Carter's failure to satisfy the requirements of Rule 61(i)(2) ], his motion *is* procedurally barred." The mere fact that the Delaware Supreme Court has some discretion to forgive procedural defaults does not weigh against the Court's plain statement. *See Harris,* 489 U.S. at 265 n. 11, 109 S.Ct. at 1044 n. 11 (noting that "[t]he 'plain statement' rule relieves a federal court from having to determine whether in a given case, consistent with state law, the state court has chosen to forgive a procedural default"). Furthermore, the fact that the Court proceeded to review the merits of Carter's constitutional claims does not make the Court's procedural ruling ambiguous because it is clear that the Court's discussion of the merits is an alternative ground for denying Carter's motion. *See id.* at 264 n. 10, 109 S.Ct. at 1044 n. 10 (noting that "a state court need not fear reaching the merits of a federal claim in an alternative holding.... [*Wainwright v. Sykes* ] curtails reconsideration of the federal issue on habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision"). Thus, Rule 61(i)(2) is an independent state procedural ground under *Wainwright.*

 Having determined that Rule 61(i)(2) is independent of federal law, the court must ascertain whether the rule is "adequate" to preclude review. In *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), the United States Supreme Court stated that a state procedural ground is "adequate" when "the State's insistence on compliance with its procedural rule serves a legitimate state interest." *Henry,* 379 U.S. at 447, 85 S.Ct. at 567. In determining whether a state procedural rule serves a legitimate state interest, a federal court can examine whether the rule is unmistakably clear and whether the state courts consistently apply the rule. *See Bond v. Fulcomer,* 864 F.2d 306, 311–12 (3d Cir.1989); *see also Henry,* 379 U.S. at 448 n. 3, 85 S.Ct. at 567 (noting that state procedural rules generally will be "adequate" when they are reasonable and clearly stated).

■ Under these criteria, Rule 61(i)(2) is clearly "adequate" to preclude federal review. Delaware has a legitimate interest in encouraging prompt and complete review of postconviction claims, saving judicial resources, and establishing the finality of convictions. By barring successive petitions that raise new claims, Rule 61(i)(2) serves all of these interests. *See Presnell v. Kemp*, 835 F.2d 1567, 1575 (11th Cir.1988), *cert. denied*, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1004 (1989) (discussing the advantages of rules barring successive petition with new claims). Furthermore, Rule 61(i)(2) is unmistakably clear; any ground for relief raised in a subsequent postconviction proceeding is barred if it was not raised in a prior postconviction proceeding. Finally, the Delaware Supreme Court has consistently applied Rule 61(i)(2) to bar claims raised in subsequent postconviction motions that were not raised in previous motions. *See, e.g., Jackson v. State*, 663 A.2d 487 at 487 (Del. Supr.Ct.1995); *Younger v. State*, No. 121, 1995 WL 301387, at *1 (Del.Supr.Ct. May 10, 1995); *Maxion v. State*, No. 176, 1995 WL 48332, at *1 (Del.Supr.Ct.1995); *Younger*, 580 A.2d at 555; *Robinson v. State*, 562 A.2d 1184, 1185 (Del.1989). Thus, Rule 61(i)(2) constitutes an independent and adequate state ground barring federal habeas corpus review.

■ Because Carter has procedurally defaulted his ineffective assistance of counsel claim, he must show either cause for and prejudice resulting from his procedural default, or that the court's failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. Carter makes no effort to demonstrate cause for his procedural default. Instead, he argues that this court should declare a "tie" between his procedural defaults and some unspecified errors allegedly committed by the prosecution. Even if the state did commit some error, it would not excuse Carter's defaults unless those errors interfered with Carter's ability to present his claims. *See id.* at 753, 111 S.Ct. at 2566 (stating that "cause under the 'cause and prejudice' test must be something external to the petitioner, something that cannot be fairly attributed to him"). Carter does not al-

lege, nor does the record disclose, any such interference with his ability to present his claims. Because Carter has not established cause for his procedural default, the court will not reach the question of whether he has shown any actual prejudice as well. *See Presnell*, 835 F.2d at 1582 n. 29.

■ The "miscarriage of justice exception" to the procedural default rule applies only in "extraordinary cases." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). To establish a miscarriage of justice, Carter must show that it is more likely than not that no reasonable juror would have convicted him. *See Schlup v. Delo*, —— U.S. ——, ——, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). In this case, Carter has not alleged any facts that would show that he is actually innocent of the crime to which he pled guilty or that the court's failure to hear these two claims will otherwise result in a fundamental miscarriage of justice. In fact, Carter admitted during his sentencing hearing that he had been trafficking in heroin. Therefore, this court is barred from hearing Carter's ineffective assistance of counsel claim.

## C. *Violation of the Plea Agreement Claim*

Carter presented his third claim, that the prosecution violated the terms of the plea agreement, to the Delaware Supreme Court in *Carter 1*. Thus, he has exhausted state remedies with respect to that claim. *See Swanger*, 750 F.2d at 295. Respondent argues, however, that Carter's claim is barred because he failed to comply with relevant state procedural requirements. Specifically, the Delaware Supreme Court stated in *Carter 1* that Carter had waived his claim that the prosecutor violated the plea agreement by not raising the issue on appeal. *Carter 1*, at 2 (citing *Stilwell*, 145 A.2d at 402).

■ The *Stilwell* rule, which deems claims not raised on appeal as waived, is clearly an "independent" state ground under *Wainwright*. The Delaware Supreme Court's application of *Stilwell* in *Carter 1* does not rely primarily on or interweave with federal law. The Court did not discuss the merits of Carter's claim as an alternative

holding, nor is the *Stilwell* rule based on any constitutional or federal principle. Moreover, the *Stilwell* rule admits of no exceptions for "the interest of justice" or "fundamental fairness." *Cf. Ake*, 470 U.S. at 74–75, 105 S.Ct. at 1091–1092. Finally, the Delaware Supreme Court's citation of *Stilwell* in *Carter 1* is clearly a plain statement that its decision rests on state grounds. *See Coleman*, 501 U.S. at 734–35, 111 S.Ct. at 2556–57.

▇ The *Stilwell* rule is also "adequate" under *Wainwright* to preclude federal review. Delaware has a legitimate interest in encouraging faster retrials, improving the quality of review, and preserving judicial resources. *See Presnell*, 835 F.2d at 1574–75 (discussing the advantages of rules barring abandoned claims). Furthermore, The *Stilwell* rule is unmistakably clear; arguments not raised on appeal are waived. Finally, the Delaware Supreme Court has applied the *Stilwell* rule in numerous appeals involving motions for postconviction relief in which the petitioner failed to raise claims raised in the Delaware Superior Court. *See, e.g., Clayton v. State*, Nos. 120, 255, 1993 WL 21987, at *1 (Del.Supr.Ct. Jan. 11, 1993); *Evans v. State*, No. 201, 1992 WL 276392, at *1 (Del.Supr.Ct. Sept. 11, 1992); *Bilinski v. State*, No. 248, 1990 WL 38304, at *3 (Del.Supr.Ct. Feb. 13, 1990); *Barr v. State*, No. 319, 1989 WL 160445, at *2 (Del.Supr.Ct. Dec. 27, 1989); *Amos v. State*, No. 126, 1989 WL 114876, at *2 (Del.Supr.Ct. Aug. 17, 1989); *Hamilton v. State*, No. 384, 1989 WL 88626, at *1 (Del. Supr.Ct. June 27, 1989); *Nasir v. State*, No. 421, 1989 WL 27781, at *1 (Del.Supr.Ct. Mar. 1, 1989); *Phillips v. State*, No. 277, 1982 WL 11301, at *1 (Del.Supr.Ct. Feb. 28, 1989). Thus, the *Stilwell* rule is independent and adequate to preclude federal review. *See Caswell v. Ryan*, 953 F.2d 853, 860–61 (3d Cir.1992) (holding that a claim raised at trial and on intermediate appeal, but not in a petition for review to the state supreme court, is procedurally barred unless petitioner shows actual cause and prejudice).

▇ To establish cause for his procedural default, Carter claims that he could not successfully appeal his claim that the prosecution violated the agreement because he was unable to obtain transcripts of his sentencing hearing. Even if this assertion is true, he did not need the transcripts merely to raise the claim on appeal. He was clearly capable of raising the claim in the Delaware Superior Court without additional material. Consequently, Carter has not demonstrated cause for his procedural default. Furthermore, Carter's failure to demonstrate a colorable claim of actual innocence militates against a finding that prejudice or a miscarriage of justice would result if this court refused to hear his claim. Thus, Carter's petition for a writ of habeas corpus must be dismissed.

The court will issue an Order in accordance with this opinion.